Decided 18 June, 1900.

## MULDRICK *v.* BROWN.

[61 Pac. 428.]

INJUNCTION AGAINST DESTRUCTIVE TRESPASS ON MINES.*

1. A court of equity will restrain a person preparing to extract ores from another's mine, though a trespass, since such extraction would destroy the substance and value of plaintiff's estate: *Bishop* v. *Baisley*, 28 Or. 119, followed.

AMOUNT OF ORE REQUIRED TO SUPPORT A CLAIM TO A MINE.

2. Under Rev. St. U. S. § 2320, requiring the discovery of a vein or lode within a quartz claim before any right can be acquired thereto, it is enough to entitle the discoverer to protect his mining rights if ore or metalliferous rock be found in place sufficient to warrant a prudent man in spending time and money on it, though it may not contain ore in paying quantities.

From Grant: MORTON D. CLIFFORD, Judge.

Suit by John Muldrick and others against Walter Brown and others to enjoin a trespass upon a mining claim. The complaint alleges, in substance, that on February 4, 1886, J. A. Whitman located a gold-bearing quartz claim in Grant County, known in the record as the Zero, and four days thereafter caused due and legal notice of such location to be filed and recorded in the clerk's office ; that on January 9, 1896, plaintiff Muldrick and Whitman jointly located another gold-bearing quartz claim, known in the

---

*NOTE.—On this question of injunction against a trespass, see *Ewing* v. *Rourke*, 14 Or. 514; *Allen* v. *Dunlap*, 24 Or. 229; *Bishop* v. *Baisley*, 28 Or. 119; *Parker* v. *Furlong*, 37 Or. ———. REPORTER.

record as the Piedmont, which, according to the notice
of location and their contention, lies immediately west of
and adjoining the Zero, and notice thereof was filed and
recorded on the next day; that subsequent to the location
of the Zero claim, and prior to the commencement of this
suit and the trespass complained of, Whitman, for a valu-
able consideration, sold and transferred to the plaintiff
Muldrick an undivided half interest therein, and there-
after sold and transferred all his right, title and interest
in and to both claims to the plaintiff Mason, who subse-
quently transferred an undivided interest to the plaintiff
Finlayson ; that ever since their location the plaintiffs,
their grantors and predecessors in interest, have been in
the actual possession of both claims, and have during each
and every year expended more than $100 on each claim,
and have in all things complied with the laws of the
United States and of this state, and with the local cus-
toms, rules and regulations of miners, and were so in
possession on the twenty-second day of April, 1897 ; that
on the day last named the defendants wrongfully, unlaw-
fully and against the plaintiffs' will, entered upon such
claims with picks, shovels and other like instruments,
and began the construction of a mining ditch across and
within the boundaries thereof, and threaten and are about
to begin to extract the gold therefrom, to the irreparable
loss and damage of the plaintiffs, and will do so unless
restrained by the court; that the defendants, and each
of them, are insolvent, and unable to respond in damages
for such unlawful acts and trespass.

The answer, after denying specifically certain allega-
tions of the complaint, admits that notices of the Zero
and Piedmont claims appear of record, as alleged, but
avers that they do not refer to nor describe the premises
in controversy, except as to a portion thereof more par-
ticularly set forth ; admits that the defendant Brown

was about to begin work within the boundaries and upon the mining ground claimed by plaintiffs, and to extract the gold therefrom, and would continue to do so unless restrained by the court, but denies that such ground belongs to the plaintiffs or any of them. For a further and separate defense, it is averred that at the time of the alleged trespass the land mentioned and described in the complaint was unappropriated placer mining ground of the United States, open to purchase and location under the mining laws, rules, and regulations of the Interior Department; that on November 5, 1896, the defendant Brown and J. C. Cobb, as they might well and lawfully do, entered upon the ground referred to, and made a placer location thereon, according to the rules and regulations aforesaid; that no vein or ledge of quartz rock in place bearing gold, existed throughout said ground, but the whole thereof was valuable only for the gold contained in the earth, gravel, and sand and rock float thereof, and could only be worked, enjoyed, located, and purchased as placer mining ground of the United States; that no portion of the ground so located in any way covers or interferes with any portion of the Piedmont mining claim; that a small portion of the Zero claim is covered by the defendants' placer location, but exactly what portion the defendants have not been able to ascertain on account of the injunction.

For a further and separate defense by way of estoppel, it is alleged, in substance, that plaintiffs ought not to be heard to claim the mining ground described in their complaint as against the defendants, because prior to the location by them the plaintiff Muldrick assured the defendant Brown that there was no quartz ledge or quartz in place ever discovered therein, and it was open to placer location, and invited him to take up the same as a placer claim; that, relying upon such assurances, Brown made

the location, and has expended large sums of money in the purchase of water rights and ditches adjacent to such ground, in order to work the same; that prior to this suit, and before the purchase by the plaintiffs Mason and Finlayson of Whitman's interest in the Piedmont and Zero mining claims, Whitman represented to and assured the defendant that no quartz lodes or quartz in place had ever been discovered in the Zero or Piedmont claims, that he had abandoned all rights under the location thereof; and that plaintiffs Mason and Finlayson purchased with knowledge of such facts. The affirmative allegations of the answer being put in issue by the reply, a trial was had upon the testimony reported by the referee, resulting in a decree in favor of the plaintiffs, and the defendants appeal.          MODIFIED.

For appellant there was a brief and an oral argument by *Messrs. Victor Z. Cozad* and *Thornton Williams*.

For respondents there was a brief and an oral argument by *Mr. John L. Rand*.

MR. JUSTICE BEAN, after making the foregoing statement of the facts, delivered the opinion of the court.

1.   The evidence is quite voluminous, but a large portion of it is irrelevant and immaterial. The questions presented are substantially questions of fact. It is claimed at the outset that the plaintiffs have not made out a case requiring the interposition of a court of equity. Under the practice in this state, the jurisdiction of courts of equity is freely exercised to prevent trespass upon mines, for the reason that the extraction of ores therefrom reaches to the substance and value of the estate, and goes to the destruction of the very essence thereof: *Bishop* v. *Baisley*, 28 Or. 119 (41 Pac. 936). It is not only alleged in the

complaint, but admitted in the answer, that the defendants were engaged in preparing to extract the ores from the ground in dispute, and would have done so had they not been restrained by the preliminary injunction, and therefore the record is sufficient, under the authorities, to give a court of equity jurisdiction. Some claim was made at the argument that the allegations of the complaint are insufficient, but whatever defect there may be in this regard is cured by the answer, and it is now too late to insist upon the objection.

We proceed, then, to a consideration of the case upon the merits. As we understand the record, the questions presented are: (1) Was there a valid location made of the Zero and Piedmont claims by the plaintiffs and their predecessors in interest? (2) Does any part of the placer claim as located by the defendants interfere with or cover the ground claimed by the plaintiffs? (3) Are the plaintiffs estopped by their conduct from asserting their right as against the defendants?

2. It is contended that no gold-bearing vein or lode was discovered within the limits of either the Zero or Piedmont claims prior to their location, and for this reason the plaintiffs are not entitled to the ground as a quartz mining claim. Under the provisions of Section 2320, Rev. St. U. S., no right can be acquired to a quartz claim before the discovery of a vein or lode within its limits; but the finding of ore or metalliferous rock in place in a defined vein is sufficient to satisfy the statute, although it does not contain ore in paying quantities. If the rock in place is sufficiently encouraging to warrant an ordinarily prudent man in spending his time or money upon it, it is sufficient, as against a subsequent locator for mining purposes: Barringer & A., Mines and M. 214; *Montana Cent. Ry. Co.* v. *Migeon* (C. C.), 68 Fed. 811; *Harrington*

*v. Chambers*, 3 Utah, 94 (1 Pac. 362); *Burke* v. *McDonald*, 2 Idaho, 1022 (29 Pac. 98).

Mr. Whitman, who located the Zero claim in 1886, testifies that before locating it he discovered a well-defined quartz lode or rock in place sixteen or eighteen inches thick; that he then measured off the claim on the ground as accurately as he could, building monuments of stone around each stake from two to two and a half feet in height; that he posted not less than six stakes, one at each end of the ledge, and one at each corner of the location, and marked those at the corners; that afterwards he made an open cut until he had obtained a trace of maybe nine feet or more, and then extended a tunnel about one hundred and fifty feet for the purpose of tapping the ledge; that since the location he had expended each year more than $100 in work and improvement on the claim; that he also located the Piedmont claim in 1894, but the notice was not recorded until 1896; that before locating the claim he discovered within its limits a quartz ledge which he traced for quite a long distance, but did not make any measurements; that after discovering such ledge he drove end stakes and posted corner stakes, after a careful measurement by a compass and measuring rod; that he posted a stake at each corner, and also one at the center of each end, and built monuments around them; that he took a copy of the notice he posted on the claim and gave it to the plaintiff Muldrick to be recorded, but for some reason it was not recorded until two years thereafter; that after the location of the Piedmont claim he placed on the ground an outfit,—tools, picks, shovels, wheelbarrows, and everything necessary for the work,—and that a part of these implements or tools were there all the time; that he lived a short distance down the hill from the east line of the Zero, and that when not working these quartz claims he

was engaged in hydraulic mining, and passed them every day ; that from the time of the location of the two claims he and his co-owner, Mr. Muldrick, had been in possession thereof, claiming to own them ; that he maintained the stakes marking the boundaries of the claims, and examined them carefully every fall and spring, always replacing any that had been moved.    The witnesses Gifford, Guker, Silsby, Bartram, and Johnson testify that they examined each of the claims referred to, and found well-defined veins or lodes of gold-bearing rock in place on each claim.    There is other evidence to the same effect, and from an examination of the entire testimony we are satisfied that the plaintiff's contention in this regard is sustained by a large preponderance of the evidence.    The great bulk of the evidence on this point seems to be directed to the question as to whether the quartz found upon the claims is sufficiently rich to justify working them as quartz claims.    But, as we have already seen, that is a matter wholly immaterial in this controversy.    The law does not require any particular degree of richness in order to support a quartz-claim location.    It only requires that there shall be sufficient indication to justify a reasonably prudent person in expending his time and money in its development, and there is abundant testimony in this case to satisfy such requirement.    Indeed, the fact that Muldrick and Whitman were willing to and did expend considerable sums of money in the development and maintenance of the Zero and Piedmont claims is quite strong evidence of that fact.    So that we shall pass without further notice this branch of the case.

It is next claimed that the Zero and Piedmont are not adjoining claims, but that the southeast corner of the Piedmont is some six hundred feet or more in a northwesterly direction from the southwest corner of the Zero, thus

leaving a triangular shaped piece of ground between the two claims. Mr. Whitman, who located both claims, testifies positively and unequivocally that the northwest corner of the Zero and the northeast corner of the Piedmont and the southwest corner of the Zero and the southeast corner of the Piedmont are common points, and that the west line of the Zero and the east line of the Piedmont is a common line; and he is corroborated by the entire circumstances of the case, and especially by the location notice prepared and recorded months before this controversy arose, which states that the east line of the Piedmont claim is the west line of the Zero. The contention of the defendants in this regard is based largely, if not entirely, upon alleged declarations of Whitman to Brown and others that the northwest corner of the Piedmont was marked by a certain fir tree near a tap in the Whitman ditch. But these alleged statements are denied by Mr. Whitman, and the testimony relating thereto is not sufficient to overcome the other evidence in the case bearing upon the location of the Piedmont claim. In our opinion it is quite clear from all the testimony that the two claims lie adjoining, and that there is no unappropriated ground between them.

The remaining question, and the one principally relied upon, is the alleged estoppel. The claim upon this point is that, prior to the placer location by defendants, Brown had a conversation with the plaintiff Muldrick, in which he (Muldrick) said that he and Whitman had been unable to find a quartz ledge or vein on either the Zero or Piedmont claim, and if Brown would locate a placer claim covering the ground it would be all right, if he would agree to deed to them any quartz ledges which might thereafter be found within the boundaries of his placer claim; that, acting upon this statement and proposition, and relying upon Muldrick's representations, the defend-

ants located the placer claim, and a few days later Brown purchased for $1,100 a ditch and water right necessary to work it.  This branch of the case, so far as it concerns the defendants, depends principally upon the testimony of Brown.  In his direct examination he testifies that, in a conversation with Muldrick prior to the location of the placer mine, Muldrick told him to go out and make such location if he wanted to.  He also testifies that he had some conversation with Whitman about the matter after the location had been made, and that Whitman made no objection to his occupying the ground or mining thereon. On cross-examination, however, he testifies as follows in answer to interrogatories : "Q. Now, then, Mr. Brown, the date of some of these conversations you had with Muldrick and Whitman.  When was it that Muldrick told you to locate the placer in the vicinity of Quartz Gulch?  A. I don't think he ever told me to locate the placer.  Q. Did he ever tell you to locate any of the ground at or near Quartz Gulch?  A. No, sir ;  he never told me to locate it.  Q. He didn't?  A. No, sir ;  I lived in Muldrick's house, and we talked together so often that it would be hard for me to designate the times.  Q. Did he tell you to locate any part of the Zero or Piedmont as placer?  A. No, sir ;  he never told me anything of that kind.  Q. Did Mr. Whitman tell you to do any such thing?  A. No, sir.  Q. How did you come to locate the placer you made over the Piedmont?  A. I just put up a location.  Q. Just of your own accord?  A. Yes, sir.  Q. Muldrick didn't tell you to do so?  A. He didn't tell me to do it ; no, sir.  Q. Didn't advise you to do it?  A. No, sir ; but he didn't object.  Q. Nor Mr. Whitman didn't tell you to do it?  A. No, sir.  Q. Nor advise you to do it?  A. No, sir.  Q. You simply went out there and found what you thought was placer, and located it?  A. Yes, sir.

37 OR.—13.

Q. That is a fact, is it?  A. Yes, sir.  Q. At that time you didn't know there was any such claim as the Zero or Piedmont?  A. No, sir.  Q. You did not?  A. No, sir; not by that name.  Q. You never asked the permission of Muldrick to go on that ground and work it for placer,— the surface?  A. No, sir; I did not." Thereafter, on redirect examination, in reference to the same matter, he says that his previous statement that Muldrick never told him to locate the ground was a mistake, and that he did not mean to make it.  He then proceeds to testify, in very great detail, to a conversation he claims to have had with Muldrick in October or November, 1896, in which Muldrick said that Thompson and Grott were claiming an interest in the mining claim by reason of some work done thereon, and in order to bar them it was agreed that he (Brown) should locate the ground as a placer claim, and deed back to Muldrick whatever portion thereof he might want.  It thus appears that Brown's testimony is of itself not consistent, and, so far as the alleged conversation with Muldrick and Whitman is concerned, he is flatly and positively contradicted by both of them.  They testify that they never had any such conversations with him, and never agreed that he might file the placer location on their ground, or encouraged him in any way to do so, but, on the contrary, that they both objected to his location as soon as they were advised of it, and notified him to keep off the ground.  We are of the opinion that the preponderance of the testimony is in their favor on this point.

Soon after or about the time the placer location was made by the defendants, Brown purchased of Hupprich for $1,100 a placer mine and certain water rights appurtenant thereto, for the purchase price of which he asked plaintiff Muldrick to go his security; stating, as he claims, that he desired the ditch and water rights for the pur-

pose of mining on the placer claim, located a few days be-
fore.   Muldrick agreed to go his security for the amount
of the purchase price, but Hupprich was unwilling to sell
except for cash in hand, which Brown obtained a few days
later.   The claim is made by the defendants that this was
sufficient to estop Muldrick from questioning the validity
of Brown's placer location, but Muldrick denies that
Brown told him he desired the ditch and water rights for
use in mining on the placer ground.   He testifies that
he understood and supposed at the time that Brown was
simply purchasing Hupprich's interest in the claim for
the purpose of working it.   We think, therefore, the evi-
dence on this point is not sufficient to constitute an equit-
able estoppel.

There are many other incidental questions covered by
the testimony, but it is unnecessary to notice them in
detail.   It is sufficient to say that, after a careful exam-
ination of the record and the exhaustive briefs of counsel,
we are satisfied the decree of the court below should be
affirmed, except in so far as it may enjoin the defendants
from using that portion of the Hupprich ditch which
passes over or across the Zero claim, for the purpose of
conveying water therein ; and to that extent it will be
modified.                                        Modified.

Decided 18 June, 1900.