## MOORE *v.* HALLIDAY.

[72 Pac. 801.]

<div style="float:right">43  243<br>45  131</div>

INJUNCTION AGAINST TRESPASS*—NECESSITY OF IRREPARABLE INJURY.

1. Equity will not enjoin the continuance of a trespass on realty unless the acts committed amount to an irreparable injury to the estate: for example, opening an inclosure and cutting crops and shrubbery growing thereon, and turning cattle therein, under a claim of right so to do, is not a destruction of the body of the estate, and an injunction will not lie against the trespasser: *Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38, *Allen* v. *Dunlap*, 24 Or. 229. and *Muldrick* v. *Brown*, 37 Or. 185, distinguished.

---

*NOTE.— Previous Oregon cases on the subject of an injunction against a trespass are *Ewing* v. *Rourke*, 14 Or. 514 (where the trespass had been completed, and no continuance was threatened); *Allen* v. *Dunlap*, 24 Or. 229 (where actual waste had been committed, and further injury threatened); *Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38 (where waste was being committed by cutting timber and digging a canal); *Bishop* v. *Baisley*, 28 Or. 119 (where ores were being extracted from a mine); *Muldrick* v. *Brown*, 37 Or. 185 (where a carrying away of ores was threatened); *Parker* v. *Furlong*, 37 Or. 248 (where a single, naked trespass had already been committed, not irreparable in character); *Union Power Co.* v. *Lichty*, 42 Or. 563 (where defendant had threatened to build up a dam and suddenly release large volumes of water on plaintiff's land further down stream). These are all cases where a distinct trespass was being committed, or was threatened, by some person out of possession on property of which plaintiff had possession. In this connection two Oregon cases may be cited holding that equity will not enjoin a trespass by one claiming merely the right to pass through an inclosure where he claims

INJUNCTION AGAINST TRESPASS — INSOLVENCY OF TRESPASSER.†
2. The mere insolvency of a trespasser does not warrant an injunction against his trespassing.

PLEADING — FAILURE TO STATE CAUSE OF ACTION — DEMURRER.
3. Under B. & C. Comp. § 72, providing that, if no objection be taken by demurrer or answer, defendant shall be deemed to have waived the same, excepting the objection that the complaint does not state facts sufficient to constitute a cause of action, a failure to demur to a count of a complaint on the ground that it does not state facts sufficient to constitute a cause of action is not a waiver of the objection.

PLEADING — STATEMENT OF SEPARATE CAUSES OF ACTION.
4. The material matter of each separate cause of suit or action stated in a pleading must be complete within itself.

INJUNCTION — INCOMPLETE TITLE TO PUBLIC LAND — POSSESSION.
5. A qualified settler on public land, who is in possession but whose title is yet uncompleted, cannot maintain a suit to quiet title thereto: *Kitcherside* v. *Myers*, 10 Or. 21; *Jackson* v. *Jackson*, 17 Or. 110; *Pacific Livestock Co.* v. *Gentry*, 38 Or. 275, distinguished.

From Malheur: MORTON D. CLIFFORD, Judge.

Suit by I. H. Moore against T. W. Halliday, administrator. From a decree for defendant, plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *William Miller* and *John L. Rand*, with an oral argument by *Mr. Rand*.

For respondent there was a brief and an oral argument by *Mr. Will R. King*.

MR. CHIEF JUSTICE MOORE delivered the opinion.

there is a county road, for in such cases the injured party has an adequate remedy at law: *Smith* v. *Gardner*, 12 Or. 221; *Tomasini* v. *Taylor*, 42 Or. 576.

There is another class of cases in which defendants in possession were destroying the substance of the estates, without authority, and were enjoined. Such cases are *Sheridan* v. *McMullen*, 12 Or. 150 (where a tenant was destroying a grove of specially reserved and peculiarly valuable trees); and *Elliott* v. *Bloyd*, 40 Or. 326 (where a tenant was acting in collusion with another to remove a prohibited class of trees from the leased premises).

A somewhat similar line of cases holds that where qualified settlers on public land, the title to which is still in the government, have been forcibly interfered with by mere trespassers, injunctions may issue to protect the possession of the settler. Such cases are *Kitcherside* v. *Myers*, 10 Or. 21; *Ewing* v. *Rourke*, 14 Or. 514 (*arguendo*); *Jackson* v. *Jackson*, 17 Or. 110; *Hindman* v. *Rizor* (*arguendo*), 21 Or. at pp. 116, 117; *Allen* v. *Dunlap*, 24 Or. 229; *Bishop* v. *Baisley*, 28 Or. 119; *Muldrick* v. *Brown*, 37 Or. 185; *Browning* v. *Lewis*, 39 Or. 11.— REPORTER.

†NOTE.— To the same point see *Parker* v. *Furlong*, 37 Or. 248.— REPORTER.

This is a suit to quiet the title to certain real property, and to enjoin a threatened continuance of trespasses thereon. It is alleged in the complaint, in substance, that on July 5, 1902, plaintiff, having made a homestead entry upon one hundred and sixty acres of land (particularly describing it) in Malheur County, Oregon, thereafter, and prior to September 26, 1902, when this suit was begun, established his residence thereon, entered into full possession, and is now the owner in fee thereof, subject to the paramount title of the United States; that defendant, as the administrator of the estate of J. H. Chandler, deceased, unlawfully claims an interest therein, asserting that such estate is the owner in fee of said premises, but that defendant has no right thereto, nor any title or interest therein, nor is he in the actual possession thereof. For a second cause of suit, plaintiff, after alleging that he made a homestead filing upon said land, and is in the sole possession thereof, as hereinbefore stated, avers that, without his consent, defendant, at divers times, too numerous to mention, opened the inclosure surrounding said premises, cut and removed hay and grain therefrom, turned cattle and horses thereon, and, claiming the right at all times so to do, threatens to continue such acts, against plaintiff's protest; that his conduct in this respect has caused, and, unless restrained, will result in, the destruction of the crops and shrubbery, to the irreparable injury and damage of said land; that defendant is impecunious and unable to respond in damages; and that plaintiff has no plain, speedy, or adequate remedy at law. A demurrer to the complaint, interposed on the ground that the two causes of suit were improperly joined, and that the second cause did not state facts sufficient to warrant injunctive relief, having been sustained, and plaintiff declining to amend or further plead, the suit was dismissed, and he appeals.

It is contended by plaintiff's counsel that the causes of

suit set forth in the complaint arose out of the same transaction, and were therefore properly joined, and that if the second cause failed to state facts sufficient to entitle their client to the relief prayed for, and was for that reason demurrable, only one cause was stated, and, this being so, the court erred in dismissing the suit.

Considering the second cause of suit, the question to be determined is whether a court of equity should enjoin a threatened commission of the acts complained of, upon the facts stated. The jurisdiction of a court of equity to restrain trespasses on real property is undoubtedly an outgrowth of its interference to prevent waste. At common law, waste, when threatened by a tenant in dower, or by the curtesy, or guardian in chivalry, was prevented by a writ of prohibition issued by a court of chancery, which, if unavailing, was followed by an original writ, emanating from the same source, and made returnable, usually, in the court of common pleas. Upon the appearance of the defendant, and after issue joined, he was tried, and, if found guilty, the plaintiff recovered single damages for the waste committed. Though the writ of prohibition at common law was limited to the class of tenants mentioned, it was afterwards extended to other persons by statute, in speaking of which, Lord Chief Justice Eyre, in *Jefferson* v. *Bishop of Durham*, 1 Bos. & Pul. 105, says: "That which these statutes gave by way of remedy was not so properly the introduction of a new law, as the extension of an old one to a new description of persons. The course of proceeding remained the same as before these statutes were made. The first act which introduced anything substantially new was that which gave a writ of waste or estrepement pending the suit. It follows, of course, that this was a judicial writ, and was to issue out of the courts of common law; but, except for the purpose of staying proceedings pending a suit, there is no intimation in any of our

text writers that any prohibition could issue from those courts." The method thus adopted to prevent the spoil or destruction of lands, houses, gardens, trees, or other corporeal hereditaments, by the tenant thereof, to the prejudice of the heir, or of him in reversion or remainder (2 Bl. Com. 281), proving cumbersome, equity intervened, and by injunction prevented the commission of waste; the jurisdiction being founded upon the necessity of preventing irremediable injury, and allowable only in cases where a privity of title existed between the parties: 1 High, Inj. (3 ed.) § 697; *Bolster* v. *Catterlin*, 10 Ind. 117; *Wiggins* v. *Williams*, 36 Fla. 637 (18 South. 859, 30 L. R. A. 754). The commission of waste having been so successfully thwarted in these cases by the intervention of a court of equity, its jurisdiction was soon thereafter invoked to prevent injuries to real property by persons having no privity of title; the tort being denominated a "trespass": *Mitchell* v. *Dors*, 6 Ves. Jr. 147. The relief by injunction in such cases has been sparingly granted, and, when bestowed, is based upon the theory of irreparable injury, resulting from the peculiar character of the property affected thereby, from the frequency of the acts complained of, amounting to a continuing trespass, or from the insolvency of the tort feasor, so that an action at law for the recovery of damages would be inadequate, thereby justifying a resort to a court of equity : 2 Story, Eq. Jur. (13 ed.) § 928; *Smith* v. *Gardner*, 12 Or. 221 (6 Pac. 771, 53 Am. Rep. 342); *Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38 (39 Pac. 399); *Garrett* v. *Bishop*, 27 Or. 349 (41 Pac. 10); *City of Council Bluffs* v. *Stewart*, 51 Iowa, 385 (1 N. W. 628); *Roebling* v. *First Nat. Bank* (*D. C.*), 30 Fed. 744; *Carney* v. *Hadley*, 32 Fla. 344 (14 South. 4, 22 L. R. A. 233, 37 Am. St. Rep. 101).

1. An injunction has been issued in this state to prevent the cutting of timber (*Kitcherside* v. *Myers*, 10 Or.

21; *Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38, 39 Pac. 399), and the removal of ore (*Allen* v. *Dunlap*, 24 Or. 229, 33 Pac. 675; *Bishop* v. *Baisley*, 28 Or. 119, 41 Pac. 936; *Muldrick* v. *Brown*, 37 Or. 185, 61 Pac. 428), but in each instance the right to the relief granted was based upon the destruction of the estate. In *Allen* v. *Dunlap*, 24 Or. 229 (33 Pac. 675), Mr. Chief Justice LORD, in speaking of equitable interference to prevent the commission of trespass to real property, says: "The general rule that a court of equity will refuse to take jurisdiction and award even a temporary injunction in cases of mere trespass is conceded; but there is an established exception in cases of mines, timber and the like, in which an injunction will be granted to restrain the commission of acts by which the substance of an estate is injured, destroyed, or carried away. In such case, the injury being irreparable, or difficult of ascertainment in damages, the remedy at law is inadequate." It is difficult to understand how the opening of plaintiff's inclosure, cutting and removing hay and grain therefrom, or turning cattle and horses therein, can ever amount to a destruction of the substance of the estate. The opening of the inclosure may have been accomplished by a mere removal of bars or the unfastening of a gate, that would not amount to a permanent injury to the fence, conceding that to be a part of the realty. The hay and grain grown upon the premises are crops, the removal of which does not constitute such an injury as cannot be adequately compensated in damages; nor can the cutting of these annual products seriously affect the land, for, if they were not severed, they would inevitably decay during the winter, and, though their destruction by the elements might enrich the soil, by giving back to it some of the ingredients extracted by their growth, resulting in a potential benefit, the cutting of such crops cannot be a very serious injury to the land. In the absence of an

averment in the complaint that the animals turned upon the premises destroyed its substance by so trampling the soil as to damage it irremediably, it must be inferred that the only injury sustained was the eating of the grass, which, like the removal of the hay and grain, is not irreparable. It will be remembered that the complaint states that, unless defendant is enjoined from executing his threat to continue the acts complained of, the shrubbery on the land will be destroyed. There is no allegation in the complaint that any shrubbery is growing on the premises, unless the legal conclusion to that effect may be considered as such; but since the character of the shrubbery is not specified, and may consist of sage brush, its destruction does not necessarily imply an irreparable injury to the estate, thus showing that the acts complained of constitute only mere trespasses.

2. The only averment, therefore, that tends in any manner to authorize the intervention of a court of equity to restrain the threatened commission of trespasses that would not be attended with irreparable injury is the alleged insolvency of the defendant, and it remains to be seen whether this is sufficient for that purpose. In *Centreville & A. Turnpike Co.* v. *Barnett,* 2 Ind. 536, the acts complained of were mere trespasses, not constituting irreparable injury, and the only averment upon which equitable interference could be based was the alleged insolvency of the defendant; and it was held that this was insufficient, the court saying: "The fact that a trespasser is insolvent will not give chancery jurisdiction to enjoin his acts, where the other circumstances of the case preclude it." In *Mechanics' Foundry* v. *Ryall,* 75 Cal. 601 (17 Pac. 703), a suit having been instituted to restrain the threatened continuance of certain acts that did not result in irreparable injury, it was held that, under the circumstances, an allegation of the defendant's insolvency did not warrant an exercise of injunctive

relief, the court saying: "Nor will equity interpose to restrain a trespasser simply because he is a trespasser and is insolvent. Other facts and circumstances must be shown before the extraordinary remedy of injunction can be invoked." In the case at bar, no other facts having been alleged, and as in cases of this character an injunction is sparingly granted (*Smith* v. *Gardner*, 12 Or. 211, 53 Am. Rep. 342, 6 Pac. 771), we think the second cause of suit set up in the complaint does not state facts sufficient to warrant the exercise of equitable interference, and for this reason no error was committed by the court below in sustaining the demurrer thereto interposed on that ground.

3. The first cause of suit was not challenged by the demurrer, except for misjoinder; but, if this part of the complaint does not state facts sufficient to constitute a cause of suit, the failure in that respect is not waived, and the want of necessary averment may be insisted upon in this court to defeat plaintiff's right: B. & C. Comp. § 72; *Evarts* v. *Steger*, 5 Or. 147.

4. It will be remembered that the complaint states that on July 5, 1902, plaintiff, having made a homestead entry upon the land in question, thereafter, and prior to September 26, 1902, established his residence thereon, entered into full possession, and, subject to the paramount title of the United States, is the owner in fee thereof; that defendant unlawfully claims an interest therein, but that he has no such right, title, or interest, nor is he in the actual possession thereof. The plaintiff not having made his homestead entry upon the land until July 5, 1902, could not have commuted his filing or made final proof in support of his entry September 26th of that year; and hence he was not the owner in fee of the land, as alleged, but had an inchoate right thereto, that might ripen into a title, if he complied with the requirements prescribed by the laws of the United States in respect to settlement, cultivation,

and proof thereof, within the time allowed. The material matter of each separate cause of suit stated in a pleading must be complete within itself: 5 Ency. Pl. & Pr. 320; *Gardner* v. *McWilliams*, 42 Or. 14 (69 Pac. 915).

5. This being so, the plaintiff's right to the premises being incomplete, but his possession undisturbed, will a court of equity, when the title is in the United States, compel the defendant to set up his claim to the land, that it may be decreed invalid? In *Kitcherside* v. *Myers*, 10 Or. 21, it was held that where a tract of public land is subject to be taken under the homestead acts, and a party has taken the initial steps to homestead it, he has a right to the possession thereof for the purpose of doing the required acts to secure his title, and, if he is prevented from taking possession by one without legal title or equal equitable claim, he may ask a court of equity to put him in possession of his rights. Mr. Chief Justice LORD, speaking for the court, in deciding the case, says: "In 1878 the plaintiff, after filing the necessary affidavits and paying the requisite fee, received his certificate therefor, and entered upon the tract of land described in the complaint as a homestead, the east half of which is the land in dispute, and in the actual possession of the defendant, and proceeded to do the necessary acts of residence and cultivation in order to comply with the terms of the homestead acts, and to perfect his title to the land. But it is clear from the evidence that the defendant was, and now is, in the actual possession of the east half of the whole tract which the plaintiff has taken as a homestead, and that he prevented and forcibly resisted the plaintiff from taking possession of the land in controversy, and was cutting down the timber, to the irreparable injury of the rights of the plaintiff in the same. It appears, then, that the plaintiff has never had possession of the land in question, although it is included in his entry, and so stated in the

certificate of the officer of the land office, and that the legal
title as to the plaintiff is in the United States. So, as to
both of these parties the legal title to the land in contro-
versy is in the United States, and whatever right either
party has to the land, not being legal, must be equitable,
if anything, and the question to be decided must necessa-
rily be, who has the superior equity, or the better right to
the possession of the land?"

In *Jackson* v. *Jackson*, 17 Or. 110 (19 Pac. 847), the plain-
tiff having filed a preëmption declaratory statement, claim-
ing certain land under the land laws of the United States,
was prevented by the defendant from taking possession of
a part of the premises, and, in a suit to enjoin such inter-
ference, it was held that a court of equity would protect
the plaintiff's right of possession so long as his entry re-
mained uncanceled. The principle thus established has
been followed, and parties entitled to the possession of land,
the title to which is in the United States, have been pro-
tected therein, when their right thereto has been disturbed,
in the following cases: *Allen* v. *Dunlap*, 24 Or. 229 (33
Pac. 675); *Bishop* v. *Baisley*, 28 Or. 119 (41 Pac. 936);
*Muldrick* v. *Brown*, 37 Or. 185 (61 Pac. 428). In each of
these cases, however, the equitable intervention was based
upon the defendant's interference with the plaintiff's right
to possession, and, as the title to the land was in the United
States, the court did not attempt to quiet it, but only to
determine who had the superior right of possession.
When the successful party in a contest before the local
land officers for a tract of land belonging to the United
States is permitted to make an entry or to file thereon,
and receives a certificate evidencing his right to the pos-
session thereof, a state court, upon proper allegation and
proof, will restrain the defeated party from disturbing
such possession while the certificate remains uncanceled,
upon the theory that an inchoate right to the land is in-

itiated which will be protected by invoking the maxim that equity will not suffer a wrong without a remedy : *Pacific Livestock Co.* v. *Gentry*, 38 Or. 275 (61 Pac. 422, 65 Pac. 597). But if, after such certificate has been issued, the defeated party is to be enjoined from asserting any claim to the land, it would seem necessarily to follow, if the de-cree is of any binding force, that he would be deprived of his right of appeal from the action of the officers issuing such certificate to their superior officers in the land de-partment of the general government. Until the title to public land has passed from the United States, as evi-denced by a patent or by a grant *in præsenti*, all questions affecting such title must be tried in the federal courts : *Wilcox* v. *McConnell*, 38 U. S. (13 Pet.) 498. In the case at bar it is apparent from an inspection of the complaint that the title to the land embraced in plaintiff's home-stead entry had not passed to him, and for this reason the first cause of suit did not state facts sufficient to authorize the court to quiet such title; and, as the plaintiff's posses-sion is not alleged to have been disturbed in that cause of suit, the defendant cannot be enjoined as an incident to the relief sought.

Neither cause of suit having stated facts sufficient to entitle plaintiff to equitable intervention, it is unnecessary to consider the question of joinder, and hence the decree is affirmed.                                          AFFIRMED.

---

Decided 22 June, 1903.