Argued April 11, decided April 25, 1911.

## CHAPMAN v. DEAN.

[115 Pac. 154.]

Navigable Waters—Use of Shores—Public Easements—Acquisition.

1. The public cannot acquire a prescriptive right to use private property bordering on navigable water as a public landing to receive and discharge passengers and freight.

Adverse Possession—Requisites.

2. To acquire title by adverse possession the possession must be hostile, under a claim of right, actual, open, notorious, exclusive, and continuous.

Ferries—Landing—Prescription.

3. Where the owners of a ferry for a long time landed upon a riparian owner's land during the several months of high water, and were more or less interrupted, sometimes by fences, and sometimes by the stage of the water, there is nothing to show that this was other than a permissive use, which might be revoked.

Injunction—Subjects of Protection — Real Property — Constant
　　　Trespass.

4. Where the owners of a ferry line constantly trespassed on the property of a riparian owner and threatened to continue it, the owner may obtain an injunction to prevent the repeated trespasses which would culminate in the establishment of an easement.

From Wasco: William L. Bradshaw, Judge.

Statement by Mr. Justice Burnett.

This is a suit by Winfield S. Chapman and Charles D. Moore against O. C. Dean, A. Pearson and A. Shepley, partners doing business under the firm name and style of Dean & Pearson.

The plaintiffs, alleging that they are the owners in fee simple as tenants in common of a certain tract of land adjacent to the town of Hood River of which they were in possession, complain of the defendants that the latter, being the owners of and operating various boats and river craft on the waters of the Columbia River, upon which the lands abut, persistently and against the warnings, protests, and commands of the plaintiffs continued to land their boats upon plaintiffs' premises, not only daily, but several times a day, and threaten to and will continue

to make such use thereof, unless restrained all to the great and irreparable injury of plaintiffs.

The answer denies the title of plaintiffs to the land, but the same was abundantly proven by record, and was not questioned at the trial or in the argument. The defendants "admit that they have made use of the place on the land described in the complaint, and are still making use thereof, as a landing for their boats and water craft, passengers and freight, daily and several times a day, and that they will continue to make use thereof, but defendants deny that the said use thereof by the defendants is to a great or irreparable injury of the plaintiffs, or that it is any injury to them or either of them at all, and deny that the said use thereof is in violation of the rights of the plaintiffs or either of them, or that the same is wrongful or without color of right." Affirmatively the defendants allege in substance that they own and operate a ferry between Hood River, Oregon, and White Salmon, Washington, under a license regularly granted by the county court of Wasco County, and another license granted by the proper authorities for Klickitat County, Washington, and that they and their predecessors in the "maintenance and operation of said ferry have habitually used the places that the defendants are now using * * for a ferry landing for freight and passengers and the United States mails for a period of more than 30 years, without interference or objection from the plaintiffs and their predecessors in interest, and the use made thereof by the defendants, and about which the plaintiffs now complain and seek to have enjoined, are the same and similar to the use made of said premises for a period of more than 30 years, and the plaintiffs have been guilty of laches and are estopped from complaining of said acts at the present time." Lastly they allege "that the general public has used the premises mentioned and described in the plaintiffs' complaint at the points and

places therein mentioned and complained of as a ferry landing and public way, under a claim of right, adversely, and not by mere permission of owners, for a period greater than the period described by the statute of limitations beyond which actions for the recovery of real property cannot be maintained, namely, for a period of more than 30 years, which said use was next prior to the commencement of this action, and was continuous and uninterrupted and substantially by way of a certain and well-defined line of travel for said entire period, at all seasons of the year when the stage of the water in the Columbia River would admit thereof, whereby an easement was and is established in favor of the public, and the use thereof by the defendants, and about which the plaintiffs complain in their complaint herein, is the use by the defendants and the public taking passage on the defendants' boats, as has been the custom for said period of over 30 years."

The affirmative answers were traversed in material particulars by the reply, and, from a decree dismissing the suit, the plaintiffs appeal.

REVERSED: DECREE RENDERED.

For appellants there was a brief with oral arguments by *Mr. William A. Carter, Mr. Enoch B. Dufur* and *Mr. Hayward H. Riddell.*

For respondents there was a brief with oral arguments by *Mr. Andrew A. Jayne* and *Mr. William H. Wilson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The defendants avow that they are constantly making use of the premises in question as a landing place, and that they will continue to do so. At the hearing they offered no proof of their alleged license to operate a ferry at that point. The attempt to claim under a prescriptive

right existing in the public is futile, for the public cannot so acquire a right to use private property bordering on navigable water as a public landing to receive and discharge passengers and freight: *Post* v. *Pearsall,* 22 Wend. (N. Y.) 425; *Thomas* v. *Ford,* 63 Md. 346 (52 Am. Rep. 513); *Talbott* v. *Grace,* 30 Ind. 389 (95 Am. Dec. 704).

2. To prevail on such a title, the defendants must prescribe in their own right and that of their predecessors. In other words, they must plead and prove title by adverse possession. To this there are five essential elements necessary: First, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and, fifth, it must be continuous. 1 Am. & Eng. Enc. Law (2 ed.) 795; *Jasperson* v. *Scharinkow,* 150 Fed. 571 (80 C. C. A. 373: 15 L. R. A. (N. S.) 1178, and notes; *McNear* v. *Guistin,* 50 Or. 377 (92 Pac. 1075); *Talbot* v. *Cook,* 56 Or. 117 (112 Pac. 709).

3. The testimony shows that these landings are made upon plaintiffs' premises during the several months of high water on the Columbia River, and that they have been more or less interrupted, sometimes by fences and sometimes by the stage of the water. There is no showing that this use of the bank has been otherwise than by acquiescence or permission of the landowner, constituting a mere revocable license. These essential elements of adverse possession are wholly lacking in the proof. It is claimed also by the defendants that there is a public way which has been in use for more than 20 years adjacent to the slough from which the landings in question are made, and that they are exercising a right to land upon the public highway which they are entitled to enjoy without hindrance from the plaintiffs. But the testimony shows that this road is merely adjacent to the slough, and at all points there is a narrow strip of land

between the ground actually occupied by travel and the bank of the slough upon which the boats land. Hence parties leaving the boats at those points in going to the road would necessarily cross the small part of plaintiffs' land, and hence be guilty of at least a technical trespass.

4. The principal question in the case is whether injunction will lie to prevent continued trespass. Originally. the rule was that injunction would not lie in the first instance prior to a judgment at law to prevent trespass, unless the threatened injury was such as would cause permanent and irreparable injury to the freehold, such as removing ores from mines; or cutting down choice shrubbery, or destroying dwelling houses or the like, or in the further instance that the defendant was insolvent. *Smith* v. *Gardner*, 12 Or. 221 (6 Pac. 771: 53 Am. Rep. 342) ; *Mendenhall* v. *Harrisburg W. P. Co.*, 27 Or. 38 (39 Pac. 399) ; *Garrett* v. *Bishop*, 27 Or. 349 (41 Pac. 10) ; *Moore* v. *Halliday*, 43 Or. 243 (72 Pac. 801: 99 Am. St. Rep. 724). But later authorities establish the doctrine that, where the trespass is continued, made up of successive acts, each comparatively unimportant in itself, and the threat and intention to continue is manifest, equity will enjoin the same, for the reason that each separate trespass forms a separate cause of action, and it would be idle to require the plaintiff to bring a distinct action for each one of the small trespasses. It would be a waste of time and serve no good purpose for the plaintiffs to bring an action at law for every different landing made by the defendants upon their land without authority. The actual damage accruing from each landing would be comparatively insignificant, and to try out each instance in an action at law would lead to a multitude of actions, the principles of which could be determined in one suit in equity. In this case the plaintiffs claim no damages, but only seek to prevent the continuation of the trespasses of which they complain. The

authorities are numerous that equity will entertain their bill for that purpose, especially when persistent invasion of plaintiffs' premises would eventually work out the establishment of an easement in favor of the defendants: *Shaffer* v. *Stull,* 32 Neb. 94 (48 N. W. 882) ; *Poirier* v. *Fetter,* 20 Kan. 47; *Murphy* v. *Lincoln,* 63 Vt. 278 (22 Atl. 418) ; *Amsterdam Knitting Co.* v. *Dean,* 162 N. Y. 278 (56 N. E. 757) ; *Walker* v. *Emerson,* 89 Cal. 456 (26 Pac. 968) ; *McClellan* v. *Taylor,* 54 S. C. 430 (32 S. E. 527) ; *Turner* v. *Stewart,* 78 Mo. 480; *Boston* v. *Sullivan,* 177 Mass. 230 (58 N. E. 689: 83 Am. St. Rep. 275) ; *Lake Shore R. Co.* v. *Felton,* 103 Fed. 227 (43 C. C. A. 189).

The decree of the circuit court is reversed, and a decree entered here according to the prayer of the complaint.

REVERSED : DECREE RENDERED.