Argued June 27, affirmed July 18, 1916.

# MATHEWS v. CHAMBERS POWER CO.*

(159 Pac. 564.)

**Injunction—Real Property—Cutting and Removal of Timber.**

1. The cutting and removal of brush and timber on a swale leading from a mill-race across plaintiff's premises to a river, to the use of which swale defendant had no right, and which would permit the river to further encroach upon plaintiff's premises, was a willful trespass upon his land which a court of equity would enjoin.

[As to injunction against trespass, see notes in 11 Am. Dec. 497; 53 Am. Rep. 346; 99 Am. St. Rep. 731.]

**Injunction—Relief—Permanent Injunction.**

2. Where it appeared that a few trees remained in the swale which should be protected because the roots tended to prevent the river from washing away its banks, an injunction was properly made perpetual, so as to prevent a repetition of the trespass.

**Appeal and Error—Failure to Take Cross-Appeal—Effect.**

3. Where plaintiff did not take a cross-appeal from the part of the decree sanctioning the building and maintenance of the defendant's spillway on his land, it will be assumed that he was satisfied with such final determination.

From Lane: JAMES W. HAMILTON, Judge.

Department 1. Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by A. C. Mathews against the Chambers Power Company, a corporation, to enjoin an alleged trespass upon real property. From a decree granting plaintiff the relief prayed for, defendant appeals.                                AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Helmus W. Thompson* and *Mr. Charles A. Hardy.*

---

*Generally on the question of injunction against trespass to cut timber, see notes in 22 L. R. A. 233 and 43 L. R. A. (N. S.) 262.
                                                          REPORTER.

For respondent there was a brief over the name of *Messrs. Foster & Hamilton,* with an oral argument by *Mr. R. S. Hamilton.*

Opinion by MR. CHIEF JUSTICE MOORE.

The facts are that, pursuant to the act of Congress approved September 27, 1850, Hilyard Shaw secured a donation land claim of 320 acres in section 32, township 17 south, of range 3 west, in Lane County, Oregon. Extending from a place near the southeast corner of this land to the northwest corner thereof was a slough through which some of the waters of the Willamette River flowed during the freshets in that stream. This depression through that land was deepened in places where necessary so that water, at all stages in the river, flowed in such artificial channel to the northwest corner of the claim, where it was employed in generating power which was used in operating a sawmill and a gristmill. Shaw, on March 1, 1856, and thereafter, executed to the defendant's predecessors in interest deeds conveying 23 acres of his land claim described generally as beginning at the northwest corner thereof; thence east along the northern boundary 11 chains; thence south 21 chains; thence west 11 chains to the western boundary; and thence north along such boundary 21 chains to the place of beginning. After describing this strip of land, most of these deeds so executed by Shaw contain clauses which read:

"Together with the water-power upon said premises with the right of way over Shaw's land claim to bring all the water that may be required to run the mills thereon and all other mills or machinery that may at any time or times be placed upon the above described premises of whatever kind or nature; also the right

to dig the present raceway as deep and wide as may
be necessary and to bank the dirt and stone on either
side; also to include sufficient dirt and stone lying ad-
jacent to the dams for the purpose of keeping them in
repair.''

The greater part of these 23 acres of land and of
the water rights appurtenant thereto are now owned
by the defendant, which leases water-power generated
on the premises to be used in operating machinery in
factories and mills erected thereon.

The plaintiff is the equitable owner by subsequent
conveyances of a tract of the donation land claim, a
part of his southerly boundary extending to and along
the middle of a slough forming a portion of the mill-
race, which waterway at this place is much wider than
in other parts. From such slough a swale leads north-
erly, and water when high flows therein to the Wil-
lamette River. In order properly to direct the cur-
rent in the mill-race, a dam about 200 feet in length
has been built by the defendant across the swale. A
cement spillway about 16 feet wide has also been put
in the dam, which means of escape permits the surplus
water at flood stages and when the mills are shut down
to flow to the river. That stream, since it was first
known by white persons, has changed its current south-
westerly about a mile, infringing upon the Shaw claim.
The swale referred to which is a part of the plaintiff's
land is covered with brush and timber, the growth and
presence of which tend to prevent the river from
making further inroads upon his premises.

Contending that Shaw's grant to its predecessors in
interest of such water-power and right of way entitled
the defendant to take from the swale any and all ob-
structions so that logs, trees, roots and limbs flowing
thereon and over the spillway might not lodge and

thereby back up the water causing damage, its managing agent caused such brush and timber growing in the swale to be cut and removed without the plaintiff's consent, whereupon this suit was instituted and terminated as hereinbefore mentioned.

1. Another appeal from a decree rendered in a suit instituted against this defendant to enjoin it from widening the mill-race through premises below the plaintiff's land is also before us. It was stipulated by the parties hereto that the evidence received in that suit should, as far as applicable, be considered herein. whatever conclusion may be reached in that case is deemed unimportant in this suit; for from a careful examination of all the testimony adverted to it is believed that Shaw's prior grant of the water-power and of the mill-race to the defendant's predecessors in interest was not then intended by the parties to such deeds to include any right to the use of the swale leading from such race across the plaintiff's premises to the Willamette River. This being so, the cutting and removal of the brush and timber was a willful trespass upon his land authorizing a court of equity to enjoin the invasion of his right, since the severing of such shrubs and trees may permit the river further to encroach upon the plaintiff's premises to the destruction of his estate therein: *Smith* v. *Gardner,* 12 Or. 221 (6 Pac. 771, 53 Am. Rep. 342); *Allen* v. *Dunlap,* 24 Or. 229 (33 Pac. 675); *Mendenhall* v. *Harrisburg Water Co.,* 27 Or. 38 (39 Pac. 399); *Union Power Co.* v. *Lichty,* 42 Or. 563 (71 Pac. 1044); *Moore* v. *Halliday,* 43 Or. 243 (72 Pac. 801); *Roots* v. *Boring Junction Lum. Co.,* 50 Or. 298 (92 Pac. 811, 94 Pac. 182); *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154).

2. It is maintained by defendant's counsel that, the trespass complained of having been committed, the court erred in making the injunction perpetual. It is

argued that no occasion to repeat the injury alleged can arise until the brush and trees grow in the swale, which reproduction will require about 20 years. The testimony shows that a few trees remain in the swale, which timber should be protected because the roots imbedded in the soil tend to prevent the river from washing away the banks of the plaintiff's land. If the defendant had cut and removed from the swale all the trees and brush, and no others could be grown therein, it is possible the rule adopted in *Ewing* v. *Rourke,* 14 Or. 514 (13 Pac. 483), might apply. In that case the refusal to enjoin a trespass upon real property was put upon the ground that the wrong complained of had spent its force, and the injured party should resort to an action at law to recover the damages sustained. The defendant's agents and servants may again be tempted to cut and remove the remaining brush and timber as occasion for their destruction may seem to demand, and in order to prevent a repetition of the trespass the injunction was properly made perpetual.

3. The plaintiff did not take a cross-appeal from that part of the decree which sanctioned the building and maintenance of the spillway on his land, and for that reason it will be taken for granted that he is satisfied with such final determination: *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995) ; *Goldsmith* v. *Elwert,* 31 Or. 539 (50 Pac. 867) ; *Board of Regents* v. *Hutchinson,* 46 Or. 57 (78 Pac. 1028) ; *McCoy* v. *Crossfield,* 54 Or. 591 (104 Pac. 423) ; *Bank of Commerce* v. *Bertrum,* 55 Or. 349 (104 Pac. 963, 106 Pac. 444).

It follows that the decree should be affirmed, and it is so ordered.                                    AFFIRMED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.