Argued at Pendleton October 30, 1918, affirmed January 21, rehearing denied February 25, 1919.

## BOULEVARD DRAINAGE SYSTEM *v.* GORDON.

### (177 Pac. 956; 178 Pac. 796.)

**Waters and Watercourses—Irrigation—Overflow—Injunction.**

1. The draining of excess irrigation waters into drainage ditch against owner's wish and command will be enjoined, though owner has suffered no irreparable damage by reason thereof.

#### ON PETITION FOR REHEARING.

**Waters and Watercourses—Ditches—Drainage—Pleading.**

2. In a suit to enjoin defendants from using a drainage ditch, in which plaintiff pleaded ownership of an artificial waterway and defendants pleaded a natural waterway, and neither claimed the two identical, defendants under their denial could show they did not do the acts alleged, but, if they claimed any right to use of plaintiff's ditch, they should have pleaded it.

From Malheur: DALTON BIGGS, Judge.

· In Banc. .

Plaintiff, a corporation, being the owner of a drainage ditch, constructed for the purpose of taking care of the excess water which might accumulate upon the lands of its several stockholders as a result of irrigation, instituted this suit to restrain the defendants from emptying the excess waters arising from the irrigation of their lands, into such ditch. The complaint, after the usual formal recitals, alleges that defendants, their agents, employees and tenants, have for more than two years past been draining their excess irrigation waters into plaintiff's ditch, without

right, and against plaintiff's wish and command.
There follow allegations as to the necessity and value
of drainage to the lands in that vicinity, and concludes
with this paragraph:

"That although defendants have been and were at
the time of constructing said drain ditch requested to
assist in its construction and maintenance in propor-
tion to their said lands, defendants and each of them
and their predecessors or grantors have refused and
still refuse to become interested in said drain and
waste ditch and refuse to pay any of the cost of its
construction or maintenance or to contribute to such
expense in any way."

The prayer is for a perpetual injunction. A de-
murrer to this complaint was filed by certain of the
defendants, which being overruled, they answered,
with a general denial, followed by affirmative allega-
tions to the effect that they and their predecessors in
interest have been irrigating their several tracts of
land since 1887, and have had a natural drainway
through section 8, township 18 S., R. 47 E., W. M. (in
which section the greater portion of defendants' lands
is situated), in a northerly direction to and upon the
N. W. ¼ of section 5, in the same township and range,
and have had ditches which they used in connection
with such natural drain, and that their possession has
been adverse and hostile and continuous since 1887.
A reply having been filed, a trial was had resulting in
a decree in accordance with the prayer of the com-
plaint, and defendants Seaweard, Gordon and Cain,
and Dugger, successor, in interest to Beagle and
Griffin, appeal.                                    Affirmed.

For appellants there was a brief over the names of
*Mr. C. McGonagill, Mr. Ralph W. Swagler* and *Mr.*

*William H. Brooke,* with an oral argument by *Mr. McGonagill.*

For respondent there was a brief and an oral argument by *Mr. William E. Lees.*

BENSON, J.—Defendants' first proposition is, that their demurrer to the complaint should have been sustained, for the reason that no facts are therein alleged disclosing any irreparable injury. In support of this contention, they rely upon *Moore v. Halliday,* 43 Or. 243 (72 Pac. 801, 99 Am. St. Rep. 724), and *Wolfer v. Hurst,* 50 Or. 218 (91 Pac. 366). These cases appear to sustain the position maintained by defendants, but in *Chapman v. Dean,* 58 Or. 475–479 (115 Pac. 154, 155), we find this language:

"The principal question in the case is whether injunction will lie to prevent continued trespass. Originally the rule was that injunction would not lie in the first instance prior to a judgment at law to prevent trespass, unless the threatened injury was such as would cause permanent and irreparable injury to the freehold, and as removing ores from mines, or cutting down choice shrubbery, or destroying dwelling-houses or the like, or in the further instance that the defendant was insolvent: *Smith v. Gardner,* 13 Or. 221 (6 Pac. 771, 53 Am. Rep. 342); *Mendenhall v. Harrisburg W. P. Co.,* 27 Or. 38 (39 Pac. 399); *Garrett v. Bishop,* 27 Or. 349 (41 Pac. 10); *Moore v. Halliday,* 43 Or. 243 (72 Pac. 801, 99 Am. St. Rep. 724). But later authorities establish the doctrine that, where the trespass is continued, made up of successive acts, each comparatively unimportant in itself, and the threat and intention to continue is manifest, equity will enjoin the same, for the reason that each separate trespass forms a separate cause of action. * * In this case the plaintiffs claim no damages, but only seek to prevent the continuation of the trespasses of which they

complain. The authorities are numerous that equity will entertain their bill for that purpose, especially when persistent invasion of plaintiffs' premises would eventually work out the establishment of an easement in favor of defendants.''

The doctrine thus announced has been approved by this court in *Stotts* v. *Dichdel,* 70 Or. 86 (139 Pac. 932) ; *Central Oregon Irr. Co.* v. *Whited,* 76 Or. 255 (142 Pac. 779, 146 Pac. 815) ; *Talbot* v. *Joseph,* 79 Or. 308 (155 Pac. 184) ; and *Barnes* v. *Esch,* 87 Or. 1 (169 Pac. 512).

These authorities also dispose of defendants' second contention, which is, that there is a failure of proof of any irreparable injury.

We come, then, to a consideration of the merits. The testimony is conflicting and, in many particulars, vague and indefinite, and an extended discussion is unnecessary, and wholly unprofitable, but after a painstaking study thereof, we find that in the fall of 1908, while the defendant Belding was the owner of the N. W. ¼ of section 8, T. 18 S., R. 47 E., W. M., some of the people owning lands lying south of that tract organized the plaintiff corporation for the purpose of providing drainage from their lands, of the excess waters resulting from irrigation. The topography of the vicinity was such that it became necessary for the corporation to construct a ditch across Belding's land, and since that land sloped gently from the east and west toward the center of the tract, and thence in a northerly direction, they approached Belding with a view to securing his co-operation as a stockholder, a proposition which he declined, because he already possessed a drainage system which he regarded as sufficient. However, he gave plaintiff permission to enter upon his lands, and enlarge his ditch across his premises, with the understanding that he would con-

tinue to drain the waste waters from his own land therein. Prior to that time, Belding's drainage system had consisted of a small ditch running north and south through the center of his land, to its northern boundary, where there was a public road to be crossed. Here, he made a ditch and a culvert, whereby he crossed the road, and conveyed the water into a sink on the S. W. ¼ of section 5. Belding did not own the land in section 5, nor did he obtain any permission to flow his waste water thereon. Thereafter, two men by the names of Peacock and Brosnan, with the consent of the agent of the owner of section 5, reclaimed the waste water in section 5, carrying it in a ditch dug by them, still farther north, and used it in the irrigation of their lands. In the spring and summer of 1909, plaintiff completed its ditch, crossing the road at a point about 30 rods west of where the Belding ditch took the road, and utilizing a borrow-pit which had been excavated in grading the road. The borrow-pit was carried down the road a short distance and then the ditch crossed the highway through a new culvert. Plaintiff's drain did not reach the sink in section 5 at all, but an entirely new ditch through that section was constructed by plaintiff, for more than 160 rods, where it connected with an enlargement of the Peacock-Brosnan ditch, and was extended to the Malheur River.

We are not concerned with the question regarding defendants' claim of a prescriptive right to dump their waste water in the sink on section 5, for that subject is not an issue, nor are the owners made parties herein. 'Certainly the evidence does not disclose any prescriptive right in any of the defendants to use plaintiff's ditch, and whatever right they may have had by virtue of the arrangement with Belding, re-

garding the right of way across section 8, was finally disposed of by the judgment in the condemnation proceeding. We conclude, therefore, that the decree of the trial court should be affirmed, and it is so ordered.

AFFIRMED.

HARRIS, J., not sitting.

Denied February 25, 1919.

ON PETITION FOR REHEARING.

(178 Pac. 796.)

Appellants file petition for rehearing.   DENIED.

*Mr. Ralph W. Swagler, Mr. William H. Brooke* and *Mr. C. McGonagill,* for the petition.

*Mr. William E. Lees, contra.*

In Banc.

BURNETT, J.—The petition for rehearing presses upon our attention a construction of the evidence which the defendants claim shows that they have a prescriptive right superior to that asserted by the plaintiff for the disposal by drainage of the surplus water in their irrigation operations. A consideration of the pleadings, however, renders it unnecessary to enter upon a new discussion of the testimony.

The plaintiff says in substance that it has constructed a drainage ditch which it describes, and that without any right thereto the defendants have persisted in using it as a depositary of the drainage from their lands, against the will and consent of the plaintiff, whereby the plaintiff is damaged. The defendants deny all the allegations of the complaint. They

then set up their ownership as individuals of certain tracts of land and claim that for a long period of time covering more than ten years they have enjoyed and used a natural drainage way from their lands in the northwest quarter of section 8 mentioned in the complaint, to and upon section 5. They do not state, however, that this natural drainage way of which they speak is identical with the ditch referred to in the plaintiff's complaint, nor do they charge that the plaintiff has interfered with their conduit. Neither do they plead any right whatever to use the ditch of which the plaintiff claims to be the owner. In other words, each party has pleaded the ownership of a water-way, the plaintiff an artificial one and the defendants a natural one. Neither claims that the two are identical.

Under their denials, the defendants could show that they did not do the acts complained of by the plaintiff. If they claimed any right to use the plaintiff's ditch they should have pleaded it. In short, so far as the pleadings show, the defendants do not claim any right in the water-way of the plaintiff; neither does the plaintiff assert any right in the natural water-way used by the defendants. On the trial of the general issue, however, there was evidence to support the finding that the defendants were discharging their drainage into the plaintiff's ditch. Hence the injunction was properly granted and the motion for rehearing must be overruled.

AFFIRMED.     REHEARING DENIED.