## CENTRAL OREGON IRR. CO. *v.* WHITED.\*

(142 Pac. 779; 146 Pac. 815.)

**Appeal and Error—Record—Filing Transcript.**

1. Under Section 554, L. O. L., as amended by Laws of 1913, page 618, providing that if a cause is one on appeal to the Supreme Court which the law requires to be submitted at Pendleton, the transcript and abstract shall be filed with the deputy clerk of the court at Pendleton, and Sections 896–898, L. O. L., providing that the clerk of the Supreme Court shall, with the consent of the court, appoint a deputy at Salem and one at Pendleton, and that the clerk shall attend each session at Pendleton unless excused by the court, the filing of the transcript with the clerk instead of the deputy clerk at Pendleton in a cause to be heard at Pendleton, is sufficient to give the Supreme Court jurisdiction.

---

\*On the question of injunction against repeated trespass; see notes, in 13 L. R. A. (N. S.) 173 and 21 L. R. A. (N. S.) 417.   REPORTER.

ON THE MERITS.

Injunction—Continuing Trespass.

2.   Where a trespass is continued and made up of successive acts, and the threat and intention of continuing are manifest, equity will enjoin it on the ground that each separate trespass forms a separate cause of action and that it would be idle to require the plaintiff to bring a distinct action for each trespass.

[As to injunctions against trespasses on real estate, see note in 99 Am. St. Rep. 731.]

Waters and Watercourses—Reclamation and Irrigation—Contracts—Acreage of Irrigable Lands.

3.   The Carey Act (Act Aug. 18, 1894, c. 301, 28 Stat. 378 [U. S. Comp. Stats. 1913, § 4686]), as amended, provides that, when a sufficient supply of water is actually furnished in a substantial ditch to reclaim a particular tract, patent shall issue therefor, and the rules of the Secretary of the Interior require that all irrigable land in each legal subdivision is to be thoroughly irrigated and reclaimed by the contract with the state and the rules made pursuant thereto. Under Section 4 of the Federal act and the acts supplementary thereto, and Act of February 24, 1909 (Laws 1909, p. 377), accepting it, the state, by its land board, contracted with plaintiff's predecessor to reclaim and irrigate land in accordance with plans filed with the state and made a part of the contract, which provided that the land should be thereafter examined, estimated and reported as a basis of reclamation liens, and plaintiff prepared a map listing the number of irrigable acres on each subdivision, the examination and report of which was approved by the state land board and furnished to the Secretary of the Interior for patent. Two tracts, in each of which the report showed 15 irrigable acres, though a more accurate subsequent topographical survey showed 25 and 26 acres, were released from lien with reference to the lands, etc., of the state's contract, and subject to the annual irrigation charge of one dollar per acre as fixed therein, by contract providing that plaintiff would supply water sufficient to irrigate each tract in the list for patent. *Held,* that defendant was entitled to water for only 30 acres, and that his breaking of plaintiff's gates to take more than sufficient therefor would be enjoined.

Costs on Appeal—Losing Party.

4.   In a suit against defendant to enjoin him from breaking plaintiff's water-gates and taking more water than he was entitled to, where defendant's interest was but a small part of the matter involved, it would be inequitable for defendant suffering an adverse judgment to bear the costs.

From Crook: WILLIAM L. BRADSHAW, Judge.

In Banc.   Statement PER CURIAM.

This is a motion to dismiss the appeal, for the reason that the transcript was not filed at Pendleton by the deputy clerk. The appeal is from Crook County,

and was filed by the clerk of this court on the 1st day of May, 1914, being within 30 days after the appeal was perfected.                     MOTION DENIED.

For the motion, *Mr. Kirk Whited,* respondent, appeared in person.

*Contra, Mr. Jesse Stearns* and *Mr. F. Ewing Martin.*

Opinion PER CURIAM.

1. Section 554, L. O. L., as amended in 1913 (Laws 1913, p. 618), provides:

"Upon the appeal being perfected the appellant shall, within thirty days thereafter, file with the clerk of the appellate court a transcript * * if the cause is one on appeal to the Supreme Court, which it is provided by law or the rules of the court shall be submitted at Pendleton, the transcript and abstract shall be filed within the time and in the manner herein provided with the deputy clerk of the court at Pendleton," etc.

By the law in effect at the time this act was passed appeals from Wasco, Crook and Sherman Counties, unless otherwise stipulated by the parties, were directed to be heard at the next succeeding term of said court, and the transcript was directed to be forwarded to the clerk there after the appeal was perfected. So this was a case to be heard at Pendleton. Sections 896, 897, 898, L. O. L., provide that the clerk shall, with the consent of the court, appoint a deputy at Salem and one at Pendleton, and that the clerk shall attend each session of the court at Pendleton, unless excused by the court. We conclude that the legislature did not intend to create the deputy clerk at Pen-

dleton an independent officer, or to give him powers denied his principal; neither can we believe there is any substantial difference in the words of the old law, that the transcript shall be forwarded to the clerk at Pendleton, and the words of the new law, that it shall be filed with the clerk at Pendleton. Therefore, we think the decision in *Pringle Falls Power Co.* v. *Patterson,* 65 Or. 474 (128 Pac. 820, 132 Pac. 527), is decisive of the motion. In that case we held, when an appellant, within the time limited gives the required notice of appeal, and files a transcript thereon with the clerk of the court, he has complied with the requirements of the statute, whether the copy of that record is left with that officer either at Salem or Pendleton, for when the transcript has been filed, jurisdiction of the cause has been secured, and our clerk can send the copy of the record to the proper place for trial, or the court can make an order to that effect.

The motion is denied.                              DENIED.

---

Reversed March 2, 1915.

ON THE MERITS.

(146 Pac. 815.)

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit by the Central Oregon Irrigation Company, a corporation, against Kirk Whited, to restrain a threatened trespass, and involves the determination of the number of acres of land for which defendant is entitled to water for irrigation under a certain contract. The Circuit Court rendered a decree in favor of defendant, from which plaintiff appeals.

The construction of the defendant's water contract with the plaintiff company under the so-called Carey Act and the statute of Oregon accepting the same is involved in this case. The following transactions bear upon the question, the substance of which are alleged in the pleadings: On or about May 31, 1902, the Pilot Butte Development Company, a corporation organized under the laws of the State of Oregon, entered into a contract with the state land board under and pursuant to the provisions of Section 4 of the act of Congress approved August 18, 1894, and of the act of Congress supplemental thereto, commonly known as the Carey Act; and under and pursuant to the provisions of the act of the legislative assembly of the State of Oregon of February 24, 1909 (Laws 1909, p. 377), entitled "An act to provide for the acceptance by the State of Oregon of certain land, and for the reclamation and disposal of the same." This contract provided, among other things, for the construction, control and operation by the Pilot Butte Development Company of an irrigation system designed to reclaim certain arid lands situated in Crook County, Oregon, known as segregation list No. 6, embracing 84,707.74 acres of the public domain, according to the plans, surveys and estimates upon which the contract was based, and including the tracts of land in the defendant's possession hereinafter described. The agreement was assigned on March 14, 1904, by the Pilot Butte Development Company, with the consent of the state land board, to the Deschutes Irrigation & Power Company, a corporation, which succeeded to all the franchises, liens, rights, privileges and emoluments of the former company under the contract. The sum of $848,557 was recited as the agreed amount to become due to the Pilot Butte Development Company for the reclama-

tion of the irrigable portion of the lands mentioned in
the contract, as then estimated; and the sum of $1 per
acre for each irrigable acre of land for which water
should be furnished for irrigation, pursuant to said
contract, in each legal subdivision thereof, was estab-
lished and agreed upon as the annual charge to be paid
to the Pilot Butte Development Company for the
maintenance of the irrigation system. It was further
agreed that the development company, its successors
or assigns, should have a lien upon the lands for the
amounts due or to become due from the owners and
occupants thereof for such annual maintenance charge
and for interest thereon at the rate of 6 per cent per
annum. About February 13, 1903, the state land
board, acting for the State of Oregon, entered into a
contract with the Secretary of the Interior, acting on
behalf of the United States, for the segregation, irri-
gation, and reclamation of the public lands desert in
character, described in the first-mentioned contract.
This later agreement was duly made and based upon
the plans, surveys and estimates submitted on behalf
of the State of Oregon, pursuant to the provisions of
the Carey Act, the amendments thereto, and the Ore-
gon statute accepting the same as above referred to.
It was duly recorded in the office of the clerk of Crook
County on December 1, 1905. The development com-
pany and its assignee and successor in interest, the
Deschutes Irrigation & Power Company, proceeded
with the construction of the irrigation system men-
tioned and the reclamation of the land in accordance
with the terms and provisions of the contract and with
the plans, surveys and estimates theretofore made.
As a result, a large part of the land, including the
irrigable portions of the tracts in possession of the
defendant, hereinafter described, was reclaimed by

water available for that purpose, furnished on and prior to February 26, 1906.

Rule 5 adopted by the company and approved by the state land board October 31, 1905, provided that:

"Persons in arrears for thirty days shall not be entitled to the use of water until such arrears are paid."

Among the tracts of land reclaimed is the following, located in Crook County, Oregon:

"The southeast ¼ of the northwest ¼ of section 19, township 15 south, range 13 east of Willamette Meridian, containing forty acres; and the southwest ¼ of the northwest ¼ (being lot No. 2), of section 19, township 15 south, range 13 east of the Willamette Meridian, containing 38.83 acres."

Of this land, according to the plans, surveys and estimates, 15 acres in each tract are irrigable under the irrigation system, and the annual charge and lien for maintenance is the sum of $15 for each tract. About February 26, 1906, the defendant applied to purchase the first described tract, and entered into a contract with the Deschutes Irrigation & Power Company, dated on that day, whereby he agreed to pay the lien for the reclamation of the lands thereto apportioned by the state land board. He took the tract subject to the annual maintenance charge of $1 per irrigable acre as provided in the contract between the State of Oregon and the Pilot Butte Development Company, and according to the plans, surveys, and estimates therefor, and subject to the rules and regulations aforesaid. On May 28, 1906, the defendant entered into another contract with the Deschutes Irrigation & Power Company for the right to acquire the second of the above-described tracts and also agreed to take it subject to the same terms and conditions.

Defendant had due notice of rule 5 of the rules and regulations, the same being printed upon the back of each of the contracts. In November, 1910, plaintiff purchased all the rights, franchises, liens, contracts and all other assets then owned by the Deschutes Irrigation & Power Company, including the right to collect the annual maintenance charges on the tracts of land in possession of the defendant, and planitiff and its predecessors in interest have duly performed all the things mentioned in the contract with the state land board and the agreements with defendant to be performed by them.

The plaintiff alleges that about September 1, 1912, it closed and fastened the gates or laterals shutting off water from the defendant's land, pursuant to rule 5, the defendant being in arrears in the payment of his maintenance charges for more than 30 days; that he wrongfully broke down and opened the gates, took the water from the ditch, and threatens to continue in such trespass to the plaintiff's damage. Defendant admits that he broke the gates and took out the water for irrigating his lands. He pleads that he does not mean to interfere with the same unless plaintiff shall fail to furnish water for his lands according to its contracts not exceeding sufficient water for 26 acres on one of the tracts and 25 on the other. Defendant also admits the execution of the several contracts mentioned, but denies that the same were based upon or were to be performed according to the "plans, surveys and estimates" referred to in the complaint. He denies that the plaintiff has performed the conditions of the agreements, and for an affirmative defense pleads his contracts with the plaintiff's predecessor, copies of which are attached to the complaint. That part

which is deemed pertinent to this inquiry recites as follows:

"Now, therefore, I * * hereby apply to said party of the second part for all of the southeast ¼ of the northwest ¼ of section 19, township 15 south, range 13 east of Willamette Meridian, Crook County, State of Oregon, containing 40 acres, and for release of a lien, thereon owned and held by said second party for the reclamation thereof, which said lien was created by the terms of said contract, between said state land board and said Pilot Butte Development Company, and by it assigned to the second party herein. In consideration whereof, and of the delivery of possession of said land to me or my qualified assigns prior to date of reclamation of the amounts herein agreed to be paid, I promise and agree, for myself, my heirs, executors, administrators and assigns, to pay the sum of $244.00, it being the amount of the lien due said second party for reclamation as fixed by said contract with the State of Oregon. * * "

Here follow stipulations for four annual payments with interest as per promissory notes, for the assignment of the application and agreement and the proceedings in the event of such assignment, and for the procedure in case of default in payments. Then the following appears:

"The second party agrees, in consideration of the terms and agreements of the first party and upon the payment of the reclamation lien above mentioned, in accordance with the terms and conditions herein expressed, to release said reclamation lien on the land above described and authorize the state land board of the State of Oregon to deed to the first party the above-described tract free from the reclamation lien thereon held by the second party; and subject to the annual maintenance charge of one dollar per acre, mentioned in the contract between the State of Oregon and the second party herein."

Defendant further alleges that, at the time he entered into the contracts, he relied upon rules Nos. 1, 2 and 3, printed upon the backs thereof, the substance of which is as follows:

(1) "The Deschutes Irrigation & Power Company, its successors or assigns, * * shall be required to furnish a supply of water for each tract in the lists for patent, sufficient to thoroughly irrigate and reclaim it and to prepare it to raise ordinary agricultural crops."

Rule 2 fixes the time of the irrigation season and provides that:

"The company shall deliver to each settler * * owning lands reclaimed by contract with the State of Oregon * * an amount of water measured at the point of delivery to his land, which will cover each acre of irrigable land to a depth of 1.8 feet"—

with a provision that the supply may be changed according to needs with the approval of the state land board.

Rule 3 states:

"Water shall be delivered to the lands of each settler at the highest practicable point or points which can be reached by a gravity flow, which point or points are best adapted to reclaim all the irrigable lands owned by such settler. Said point or points of delivery shall be ascertained and determined by the chief engineer of the company, and in case of dispute between the chief engineer of the company and the settler as to the point of delivery the question shall be submitted to the state engineer whose decision shall be final."

It is alleged by the defendant that there is in excess of 26 acres of irrigable land upon the tract described in his first contract and more than 25 acres upon that embraced in his second agreement. It appears that during the year 1907 the Deschutes Irrigation & Power

Company received $26 as an annual maintenance charge on one of defendant's contracts and $25 on the other at $1 per acre, since which time, except when the dispute arose, the defendant has paid $15 for each tract; that afterward the company credited the amount in excess of $1 per acre for 15 acres in each tract for the year 1907. The evidence shows that one of the gates was repaired three times and then allowed to remain open during the irrigation season of 1912. Upon this point the defendant testified to the effect that, if the company refused to recognize his right to water for 25 acres and 26 acres on the respective tracts and closed his gates, he would probably break them open again. He stated: "You shut them off again, and I will break them open again and take it." He also testified that the reason for breaking the gates was that he was entitled to water for the above-mentioned acres on the respective tracts; that he was trying to bring the matter to an issue and challenged suit.

REVERSED.  DECREE RENDERED.

For appellant there was a brief over the names of *Mr. Jesse Stearns* and *Mr. F. Ewing Martin,* with an oral argument by *Mr. Stearns.*

*Mr. Kirk Whited* submitted a brief for respondent.

MR. JUSTICE BEAN delivered the opinion of the court.

1. It appears from the record that there is a real controversy between the parties, and that there has been an alleged trespass which is threatened to be continued under the same circumstances. In brief, if the contention of the plaintiff as to the rights under the contracts referred to are correct, then the acts of the defendant were wrongful and should be restrained.

If the contentions of the defendant in this respect are maintained, then a decree should be rendered in his favor.

2. The authorities establish the doctrine that where a trespass is continued, made up of successive acts, and the threat and intention of continuing are manifest, equity will enjoin the same, for the reason that each separate trespass forms a separate cause of action, and it would be idle to require the plaintiff to bring a distinct action for one of the small trespasses: *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154); *Micelli* v. *Andrus,* 61 Or. 78, 89 (120 Pac. 737); *Mendenhall* v. *Harrisburg Water Co.,* 27 Or. 38 (39 Pac. 399). 1 High on Injunctions (4 ed.), Section 702a, states the rule as follows:

"It is held that where the acts of trespass are constantly recurring, but the injury resulting from each separate act is trifling, so that the damages recoverable for each act would be very small when compared with the expense necessary to prosecute separate actions at law therefor, relief will be granted owing to the inadequacy of the legal remedy."

3. The express acreage question under contracts of the kind named is involved in the case at bar. It is of importance to the various settlers upon such projects, where there is a dispute as to the number of irrigable acres.

Rule 1 printed on the back of the contract of the defendant for a release of the lien, and to all intents and purposes made a part thereof, in effect provides that the company "shall be required to furnish a supply of water for each tract in the lists for patent, sufficient to thoroughly irrigate and reclaim it and to prepare it to raise ordinary agricultural crops." Rule 2 fixes the time of irrigation and provides that

the·,company shall deliver to each settler an amount
of water measured at the point of delivery to his land
which will cover each acre of irrigable land to a depth
of 1.8 feet.   The number of irrigable acres must there-
fore be determined.   This is not given in the contract
between the company and the settler, which is based
upon and made for the purpose of carrying out, or as
an extension of, the plan provided for in the contract
between the company and the state under the provision
of the Carey Act and the statute of the state.

Turning to the contract between the company and
the State of Oregon (Plaintiff's Exhibit ''F,'' p. 2),
we find that the company agrees, among other things,
as follows:

''To build and construct a system of irrigation sub-
stantially according to the plans submitted by it with
its application for this contract, now on file with the
state land board, which said plans are hereby referred
to and by reference made a part of this contract; to
furnish an ample supply of water, substantially in
accordance with said plans to reclaim the lands herein-
after described and set out herein, in compliance with
the acts of Congress granting the same to the state.''

The following also appears:

''It is further mutually understood and agreed that
of the lien hereinbefore created upon lands reclaimed,,
for cost of reclamation each smallest legal subdivision
shall bear such proportion as the true value of the
subdivision bears to the value of the whole tract sub-
ject to the lien, and that, for mutual convenience, as
soon hereafter as the land can be examined and the
value thereof estimated and reported upon and the
report approved in writing and the lien apportioned
and designated by the state land board, the amount of
the lien against such respective tract, as· so desig-
nated, shall be fixed and determined, and not there-
after subject to change, except by mutual consent.''

We must resort to this contract in solving the question.

An estimate of the number of acres susceptible of irrigation on each legal subdivision of the land was prepared and listed by the company and the number indicated on the map. The lands were examined with much care by A. E. Hammond, a civil engineer appointed by the state land board, who fixed the relative value of each 40 acres in the list, and apportioned the same as a lien thereon held by the company for the cost of reclamation. His report to the state land board was made June 2, 1904. It showed that the prices were "based entirely upon the character of the soil and the amount of tillable (or irrigable) pasture and waste land in each forty-acre piece." This report was approved by the board, and the amount of the lien against each smallest legal subdivision fixed and determined as recommended. This list was furnished the Department of the Interior for patents. The list (Plaintiff's Exhibit "I") comprises about 36 pages of typewritten matter. That portion referring to defendant's lands is as follows:

| Parts of Sections. | Sec. | T. | R. | Area. | Irrigable land. | Waste land. | Price per acre. | Total value. |
|---|---|---|---|---|---|---|---|---|
| Lot 2 | 19 | 15 S. | 13 E. | 38.83 | 15.00 | 23.83 | 9.00 | 349.50 |
| S. E. ¼ N. W. ¼ | | | | 40.00 | 15.00 | 25.00 | 6.10 | 244.00 |

A more accurate topographical survey of the land made subsequently showed defendant's tracts of land to contain 25 and 26 acres susceptible of irrigation,

and defendant's measurement thereof makes the same 27 acres and a fraction in each tract. It is contended by the defendant that, notwithstanding the number of acres specified in the list as irrigable land, he is entitled to water for all that part of his land that can be irrigated by the gravity system without further payment in connection with the construction of the works. This he claims by virtue of the general clause in the Carey Act (U. S. Comp. Stats. 1913, § 4686), reading as follows:

"And when an ample supply of water is actually furnished in a substantial ditch or canal to reclaim a particular tract, then patent shall issue for the same."

Also, by virtue of the requirement of the rules of the Secretary of the Interior that all the irrigable land in each legal subdivision is to be thoroughly irrigated and reclaimed, by the contract with the state, and by the rules promulgated pursuant thereto. The area of land in each tract which is susceptible of irrigation from the nature of things is an indefinite quantity varying where the land is undulating according to the amount of labor bestowed thereon in leveling the same. The amount thereof is subject to ascertainment. In order to fix the dimensions and estimate the cost of construction of the irrigation system for the reclamation of these lands, and in accordance with the provisions of the contract between the company and the state upon which defendant's rights are based, the number of irrigable acres in each tract of defendant was determined to be 15. This was by an estimate. An exact topographical survey would, no doubt, have entailed an expenditure of many thousands of dollars. This determination was approved by the land board and also by the Department of the In-

terior, as we understand. It was acted upon by the company in the construction of the canals and works and in making the appropriation of the water necessary therefor. The application and agreement for the land and acceptance of a conveyance of the same were founded thereon. It is claimed that there are 3,400 acres of like excess acreage. The arrangement made cannot be disturbed without encroaching upon or at least menacing the rights of other water users. It may be that, after a large portion of the segregation has been irrigated for a time, a less amount of water will be required therefor, and an equitable allotment can be made so as to serve the land in dispute. In the present condition of the contracts and interests involved, the number of acres of irrigable land for which the defendant is entitled to water under the contract and the statute must be limited to 15 acres of each subdivision.

According to the letter and spirit of the enactments referred to and the contracts entered into in conformity therewith, the water users in the end pay for the construction of the irrigation system, and each subdivision should bear its proportionate share of the burden as nearly as practicable according to its value. The area of irrigable land is the chief factor in regulating the value of a tract. If the water users are entitled to water for the excess acreage over and above the number of acres contained in the list for which the works were constructed, then the plaintiff company may demand and collect $1 per acre as an annual maintenance fee for all the excess acreage. The lien on many of the forties, all of which could be irrigated, was fixed at $14.75. After a large number of acres had been applied for on November 16, 1906, the amount of the lien per acre on the remainder was

changed by a supplemental contract with the state. As we view the matter, a readjustment can only be made by agreement of the parties with the approval of the state land board. Stated in brief, the defendant's agreement has for its foundation the contract with the state. The list is made a part of the latter by virtue of the stipulations therein. All were given force by the statutes under which they were executed and carried out. The reclamation of a particular tract of land under the Carey Act sufficient for the issuance of patent therefor, viewed in the light of the older desert land law of March 3, 1877, means to reclaim all of such land that is susceptible of irrigation. This area, being indefinite, must of necessity be ascertained from the contracts and fixed as above indicated. The defendant should be inhibited from interfering with the gates named for the purpose of using more water than sufficient to irrigate 30 acres of his land according to the contract. It follows that the decree of the lower court must be reversed and one entered in accordance herewith.

4. In view of the fact that this is a suit to adjust a matter in which defendant's interest is but a small part, it would be inequitable for him to bear the burden of costs; therefore neither party should recover costs. And it is so ordered.

REVERSED. DECREE RENDERED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.