Argued 26 October; decided 20 November, 1899.

## BROWN *v*. SOUTHERN PACIFIC COMPANY.

[47 L. R. A. 409, 58 Pac. 1104.]

1. COVENANT TO FENCE RAILROAD RIGHT OF WAY.*—A covenant in a deed to a railroad company, by which the grantors agree to build a fence along the railroad, "or not hold such railroad responsible for any damage done to stock belonging to us," without any mention of assigns, is personal to the grantors, binding them only, and does not run with the land, or affect tenants or successors in interest.

2. RAILROADS—LIABILITY FOR KILLING STOCK—STATUTORY NOTICE.—The notice provided for in Laws, 1893, p. 28, providing that certain railroad companies shall be liable to the owners of stock for damages resulting from failure to keep their tracks fenced; *provided, however*, that no action shall be maintained for damages until such owner has given at least thirty days' notice in writing to the company, is not jurisdictional, and hence a notice including plaintiff's stock for which he seeks to recover is sufficient, though it includes other stock owned jointly by plaintiff and another, and is signed by both.

From Marion : GEORGE H. BURNETT, Judge.

This is an action by Sam H. Brown to recover from the Southern Pacific Company the damages caused by the killing of four of plaintiff's cows by one of defendant's locomotives. The negligence alleged as constituting the cause of action is defendant's failure to place gates or bars at the intersection of its right of way with a private road crossing a farm cultivated by plaintiff, in consequence of which said cows got upon the track and were killed. The answer, after denying the material allegations of the complaint, avers that on November 10, 1870, Samuel Brown and Elizabeth Brown, his wife, executed a deed to the Oregon & California Railroad Company, a corporation, conveying a strip of land sixty feet in width across said farm, and therein covenanted with said corporation, its successors and assigns, to build and maintain a fence on each side of the railroad to be built through said premises ;

---

*NOTE.—On the question here decided, see the following cases: *Pittsburg, C. & St. L. R. R. Co.* v. *Bosworth,* 2 L. R. A. 199; *Gulf C. & S. F. R. R. Co.* v. *Smith,* 2 L. R. A. 281; *Hickey* v. *Lake Shore & M. S. Ry. Co.* 23 L. R. A. 396, 46 Am. St. Rep. 545.
—REPORTER.

that said deed was duly recorded in the records of Marion County on November 11, 1870, and plaintiff had full notice and knowledge thereof ; that defendant is the lessee of said corporation, and successor in interest of its right of way and of said covenant ; that plaintiff is the son and successor in interest of Samuel Brown, and as such used and occupied said farm, and the private crossing thereon, subject to said covenant ; that said cows got upon defendant's track at said crossing by reason of plaintiff's failure to place gates or bars thereat, and were killed without any fault upon defendant's part.    The reply having put in issue the allegations of new matter contained in the answer, a trial was had, in which the jury, in pursuance of the court's instructions, returned a verdict for the defendant, and, a judgment having been rendered thereon, plaintiff appeals.                            REVERSED.

For appellant there was a brief over the name of *Carson & Fleming*, with an oral argument by *Mr. John A. Carson.*

For respondent there was a brief and an oral argument by *Mr. Albert H. Tanner.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1.   The question presented for consideration is as to whether the covenant in the deed of Samuel Brown and wife to the Oregon & California Railroad Company created a charge upon their estate running with the land, and binding upon plaintiff.   The said covenant is as follows : "And we further agree to build and maintain a fence on such side of said railroad through the premises herein, north of the town of Gervais, or not hold such railroad responsible for any damage done to stock belonging to us."    The right to have a division fence built or repaired by an adjoining proprietor is a benefit to the dominant

36 OR.—9.

and a detriment to the servient estate, which is in the nature of a distinct easement, affecting the lands of the proprietor upon whom the burden is imposed : Tyler, Bound. 343 ; Washburn, Easem. (2 ed.) 601 ; *Bronson* v. *Coffin*, 108 Mass. 175 (11 Am. Rep. 335). It has been held that a covenant to build or maintain a division fence creates an incumbrance upon the covenantor's estate, which runs with the land, if so intended by the parties to the deed : 12 Am. & Eng. Enc. Law (2 ed.), 1049 ; *Beach* v. *Crain*, 2 N. Y. 86 (49 Am. Dec. 369) ; *Burbank* v. *Pillsbury*, 48 N. H. 475 (97 Am. Dec. 633). In order to determine whether a clause in a deed conveying real property is to be construed as a covenant running with the land, or a condition personal to the parties, it is necessary to consider two subordinate questions : First, whether the right granted or the burden imposed is connected with the land affected by the conveyance, or collateral to it ; and, second, if found to be the former, whether the situation of the parties and the condition of the subject-matter enable the court to say, from an inspection of the language of the deed, that it was the intention of the parties thereto that the covenant should run with the land : *Masury* v. *Southworth*, 9 Ohio St. 340. In *Kellogg* v. *Robinson*, 6 Vt. 276 (27 Am. Dec. 550), Mr. Justice PHELPS, after speaking of those covenants which necessarily run with the land, says : "There is another class of covenants of a doubtful or equivocal character, and which may be treated either as merely personal, or as annexed to and running with the land. With respect to these, it is doubtless competent for the contracting parties to make them either the one or the other, as they think expedient. When, therefore, the party covenants for himself and his assigns, it evinces an intent to bind the land, and the obligation becomes connected with and qualifies his estate."

An examination of the covenant in the deed of Samuel Brown and wife shows that it does not include their "assigns" in express words, and, inasmuch as the fence along the right of way was not *in esse* at the time the deed was executed, it is contended that the omission in this particular manifests an intention that the covenant should be personal only. "When the covenant," says Lord Coke, in *Spencer's Case*, 1 Smith, Lead. Cas. 137, "extends to a thing *in esse* parcel of the demise, the thing to be done by force of the covenant is *quodam modo* annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, although he be not bound by express words; but, when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which hath no being,—as, if the lessee covenants to repair the house demised to him during the term, that is parcel of the contract, and extends to the support of the thing demised, and therefore is *quodam modo* annexed appurtenant to houses, and shall bind the assignee, although he be not bound expressly by the covenant; but in the case at bar the covenant concerns a thing which was not *in esse* at the time of the demise made, but to be newly built after, and therefore shall bind the covenantor, his executors or administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being." In *Kellogg v. Robinson*, 6 Vt. 276 (27 Am. Dec. 550), which was an action upon a covenant against incumbrances, it was alleged in the declaration that in a certain deed the grantee had covenanted to make and maintain the partition fences, and at the trial it was contended that, as it was not averred that the assignees of the grantee were to be bound by the covenant, and as the fence was not *in esse* at the time the conveyance was executed, the covenant never became effective; but, it ap-

pearing that the fence had afterwards been built by the grantee, it was held that the first clause of the covenant was thereby satisfied, and the latter clause became operative, as concerning a thing *in esse*. In *Masury* v. *Southworth*, 9 Ohio St. 340, the court held that the omission of the word "assigns" in a lease containing a covenant on the part of the lessee to insure a building on the demised premises did not exempt the assignee of the lease from the performance of its conditions, when it was apparent from an inspection of the instrument that it was the intention of the original parties thereto to make the covenant run with the land. Mr. Justice GHOLSON, commenting upon the rule announced in *Spencer's Case*, says : "When any effect, such as to pass an estate or create an obligation, is dependent upon the intent of parties as expressed in a writing, it is an important inquiry whether the law has prescribed certain words or expressions as essential to be used to indicate that intent. If it be so, those words must be used, and none others will suffice. The word 'heirs' in the case of a conveyance to create an estate in fee simple is an instance. But, where the law has prescribed no such words, then the intent of the parties must be ascertained from the whole instrument, interpreted and construed by just and proper rules."

In *Duffy* v. *New York & H. R. R. R. Co.* 2 Hilt. 496, the plaintiff, having hired a pasture belonging to one Mrs. Bassford, turned his horse therein, which escaped through a defective fence, and, getting upon the railroad track, was killed. In an action to recover the damage thus sustained, it appeared that Bassford and his wife had executed a deed to defendant of a strip of land adjoining said pasture lot, containing a covenant on the part of the grantors for themselves, their heirs, executors, and administrators, to erect a fence and maintain the same in good repair for eighteen years, and it was

held that, notwithstanding the word "assigns" was not used in the deed, the covenant was intended to run with the land, and was binding upon all persons claiming or occupying the premises under the party making the covenant.   The court, in rendering the decision, alludes to *Spencer's Case*, and says : "But this nice distinction, originating at a time when it was necessary to use the word 'heirs,' or other words of inheritance, in a conveyance, in order to grant or convey an estate in fee, cannot be now said to exist, as in *Norman* v. *Wells*, 17 Wend. 136, it was determined that those covenants run with the land, which are made touching or concerning it, and affect its value, and are not confined to those which relate to some physical act or omission upon it."   The word "heirs" is not now necessary to create or convey an estate in fee simple.   All of the grantor's estate passes by his deed, unless the intent to convey a less estate appears by express terms, or is necessarily implied from the language of the deed :   Hill's Ann. Laws, § 3005.   The statute not having prescribed that the word "assigns," or other words of like import, shall be necessary to make a covenant run with the land, the omission of such words from a deed by which a right is connected with the dominant estate, or an obligation inheres in the servient estate, does not necessarily evidence an intention that the clause conferring the right or imposing the burden is a condition personal to the party charged with its performance. An examination of the language of the deed for the purpose of ascertaining the intention of the parties, shows that the grantors stipulated, in effect, that, if they neglected to build or maintain the fence agreed upon, the grantee should not be held responsible for any damage resulting from such neglect to stock belonging to them. This exemption from liability is the legal result of the grantors' failure to comply with the terms of their deed,

and necessarily follows their neglect to build and maintain the fence, without being recited in the deed; for the rule is well settled that, if an adjoining landowner agree with a railroad company to build and maintain a fence along its right of way, the company is not liable to such proprietor, or to his assigns, who take his estate with notice thereof, for injury resulting from neglect to perform or keep such agreement: 12 Am. & Eng. Enc. Law (2 ed.), 1071; *St. Louis, etc. Ry. Co.* v. *Washburn*, 97 Ill. 253; *Duffy* v. *New York & H. R. R. R. Co.* 2 Hilt. 496.

No agreement, however, entered into between a railroad company and an adjoining proprietor, whereby he stipulates to build and maintain division fences, will absolve the company from liability to persons not parties to the contract, or in privity with them, for injury resulting from the land owner's failure to keep his engagement in this respect: 12 Am. & Eng. Enc. Law (2 ed.), 1072; *Wabash Ry. Co.* v. *Williamson*, 104 Ind. 154 (3 N. E. 814); *Warren* v. *Keokuk & D. M. R. R. Co.* 41 Iowa, 484; *Thomas* v. *Hannibal & St. Joe R. R. Co.* 82 Mo. 538; *Gilman* v. *European & N. A. Ry. Co.* 60 Me. 235. A tenant who enters upon land with notice of his landlord's covenant with a railroad company to build and maintain a division fence along the right of way, can acquire by the demise no greater estate in the premises than his landlord possessed therein, and hence he has no remedy against the company for injury to his stock resulting from the landlord's failure to build or repair such fence: *Easter* v. *Little Miami Ry. Co.* 14 Ohio St. 48; *Duffy* v. *New York & H. R. R. R. Co.* 2 Hilt. 496; *Indianapolis, etc. Ry. Co.* v. *Petty*, 25 Ind. 413; *St. Louis, etc. Ry. Co.* v. *Washburn*, 97 Ill. 253. If Samuel Brown and his wife had leased their land, their tenant's stock could not, in any sense, be regarded as their own.. The right conferred by their deed upon the railroad company was, so far as they were

concerned, to permit it to operate its trains without fencing its right of way, and by exempting it from liability for injury to stock belonging to them they would in such case, thereby impliedly reserve the right to their tenant, which he could enforce, of compelling it to fence its track across their premises, or be responsible to him for any injury to his stock in consequence of a failure to do so; for by exempting the company from liability for stock belonging to them only they restricted its right to use the track without fencing to the time in which they had possession of the premises, and made it responsible to their tenant for damage done by it to his stock in consequence of its failure to fence the track through said premises; and what is true of their tenant's stock must apply with equal force and reason to the stock of their successor in interest. The failure to include the word "assigns" in the deed is not controlling if it can reasonably be inferred from the language of the instrument that the parties intended that the covenant should run with the land; but the absence of such word, or other words of like import, may be considered in connection with the context of the deed in arriving at the intent of the parties in this respect. Giving to the deed such construction, we think the parties thereto never intended that the stipulation to build and maintain the fence should be regarded as a covenant running with the land, but that such clause was meant to be a condition personal to the grantors, and binding upon them only.

It is alleged in the answer, and denied in the reply, that plaintiff is the successor in interest of Samuel Brown. The bill of exceptions, however, shows that plaintiff, in answer to the question, "In what way were you occupying this land at the time these cattle were killed respectively?" said: "I was employed by my mother. She had a life lease on the place, but she died since I began this

suit against the company. I was working for a salary, and kept my stock on the place.'' The pasturing of this stock necessarily created a privity of estate, but whether he was the tenant of his mother, or the successor in interest of his father, can be of little consequence, for, in either event, he was not bound by their agreement. Giving to the deed such an interpretation, we think the court erred in instructing the jury to find for the defendant.

2. In view of a new trial it becomes important to consider another error alleged to have been committed by the trial court. The action is founded upon the statute which requires certain railroad companies in Oregon to fence their tracks, and provides that for any neglect in this respect they shall be liable to the owners of stock for any damages which may result thereto in consequence of such neglect, and also for reasonable attorney's fees; *provided, however*, that no action shall be maintained until after such owner has given at least thirty days' notice in writing to such railroad company : Laws, 1893, p. 28. Plaintiff, more than thirty days prior to the commencement of the action, served upon W. W. Skinner, a station agent of the defendant at Salem, a notice, of which the following is a copy : ''To the Southern Pacific Company : Notice is hereby given that Mrs. Elizabeth Brown, a widow residing near Gervais, Marion County, Oregon, and Sam H. Brown, a farmer residing near Gervais aforesaid, claim of and from you the sum of two hundred and forty-five dollars, the reasonable value of four thoroughbred cows, one colt, and one calf, wrongfully and negligently killed by you upon your line of railroad near Gervais aforesaid on and between the 1st day of February, 1894, and the 5th day of November, 1895 ; and, unless the said sum be paid within thirty days from the date of service of this notice upon you, an action will be commenced against you in the Circuit Court of Oregon for Marion County, by said

Elizabeth Brown and Sam H. Brown, to recover from you the said two hundred and forty-five dollars, and the costs and disbursements of said action, together with such further sum as the court may adjudge reasonable to be allowed as attorney's fees in said action.    Dated at Salem, Oregon, this 19th day of December, 1895.    Elizabeth Brown and Sam H. Brown, by Carson & Fleming, Their Attorneys.''    It was alleged in the complaint, in substance, that plaintiff gave the required notice, including therein a demand for a colt and a calf killed in July, 1895 ; but said colt and calf were owned jointly by plaintiff and Elizabeth Brown, and plaintiff is not seeking to recover the value of said colt and calf in this action. The answer denies that said notice contained a demand for one colt or one calf, or that said colt or calf were jointly owned by plaintiff and Elizabeth Brown.    The plaintiff, being called as a witness, testified that the cows mentioned in the complaint were the ones described in the notice, and were owned by him at the time they were killed, but that his mother, Elizabeth Brown, owned the colt and calf described in the notice.    Said notice was then offered in evidence, and, the court having sustained an objection to its introduction on the ground that it was joint, plaintiff's counsel excepted to the ruling, and contends that the court erred in this respect.    If the allegation of the complaint with respect to the joint ownership of the stock had been established upon the trial, plaintiff would undoubtedly have been ''such owner,'' within the meaning of the act.    The object of the statute requiring notice to be served is to give to the railroad company an opportunity to settle the claim of damages resulting from its neglect, thereby avoiding the expense of an action ; and this object was fully accomplished by the service of the notice offered in evidence.    The notice is not jurisdictional, nor does the statute prescribe the form thereof,

and, in our judgment, the court erred in not receiving it in evidence. It follows that the judgment is reversed, and a new trial ordered.                               REVERSED.