Argued December 5, modified December 27, 1917, rehearing denied January 29, supplemental petition for rehearing denied February 19, 1918.

# OREGON-WASH. R. & N. CO. *v.* REED.*

(169 Pac. 342; 170 Pac. 300.)

**Abatement and Revival—Denial of Plea in Abatement—Pendency of Prior Suit—"Pending."**

1. Suit against husband and wife, commenced against the husband alone July 17th, amended complaint making the wife a party defendant being filed July 31st, was "pending" when the wife's suit against plaintiff was instituted July 28th, so that denial of defendants' plea in abatement on the ground that a prior suit instituted by the wife against plaintiff was pending was proper.

**Attorney and Client—Admissions—Effect.**

2. In suit by a railroad against land owners, where the land owners claimed they did not understand the effect of a deed of theirs to the road, but their previous attorney, who acted for them in the transaction, testified unequivocally that they did understand its effect, and their present attorney in court stated that he could not contradict such previous attorney's testimony, and would have to abide by it, the announcement, approved by the court, forever settled the question that the land owners' deed was knowingly executed by them as a substitute for and in lieu of their previous conveyance to the railway.

**Railroads—Right of Way—Covenant Running With Land—Basis in Inference.**

3. In the absence of any evidence in relation to whether rights of the grantor of land to a railway to have two wagon road crossings maintained ran with the land, or were anything more than personal covenants, the reference, in the reservation of his deed, to a county road, might create an inference that the designated highway was *in esse*, a part of the land, so that the railway was required to perform the terms of its agreement in favor of the grantor's assigns without express words to that effect.

**Railroads—Right of Way—Land Owners' Right to Cross.**

4. In suit by a railway against land owners to enjoin interference with its right of way and to quiet title, the trial court properly restricted the right of the land owners to the private crossing of the track to be made and maintained by them at the place designated by them in their latest conveyance to the railway's predecessor, where no right to cross any part of the premises elsewhere could possibly be found in their favor by the most liberal construction of the two grants, when read together.

*On the question of right to injunction against repeated trespass, see notes in 13 L. R. A. (N. S.) 173; 21 L. R. A. (N. S.) 417.

As to when action is deemed commenced for the purpose of abating subsequent action, see note in 52 L. R. A. (N. S.) 79.          Reporter.

**Equity—Damages.**

5. The right to recover damages in a suit or cross-suit in equity must depend on some equity which enables the court to secure and retain jurisdiction of the subject matter, and, as an incident, to award the damages inflicted.

**Equity—Finding No Equity Exists—Trial to Ascertain Legal Right.**

6. Where it is found at hearing of a cause that the equity on which it was predicated does not exist, the suit is terminated, and cannot be tried to ascertain any legal right existing between the parties.

## PETITION FOR REHEARING.

**Equity—Jurisdiction.**

7. When a court of equity obtains jurisdiction of a cause for a particular purpose, it will retain and exercise jurisdiction to determine all necessary incidents, though they may involve purely legal matters as a part of the relief.

**Injunction—Trespass—Permanent Injury.**

8. A continuing trespass committed upon real property, tending to a removal of earth or of any substance therein or permanently attached thereto, will usually be enjoined in a suit instituted for that purpose by the party sustaining the injury.

**Injunction—Trespass—Legal Remedy.**

9. When the recurrence of injury by trespass is not reasonably to be apprehended, the remedy at law for recovery of damages is usually regarded as adequate, and relief by injunction will usually be denied.

**Trespass—What Constitutes—Cutting Timber.**

10. It is not a trespass for a railroad to whom a right of way is granted to cut shrubs along the right of way, with permission of the abutting owners.

**Trespass—Damages—Measure.**

11. Where railroad cut brush along right of way and left it upon the abutting owner's land, her remedy was the expense reasonably to be incurred in removing it, and not the damages which might result from inability to use the land for agricultural purposes.

**Injunction—Trespass—Damage.**

12. Where railroad cut brush along right of way and left it on adjoining land, an action at law to recover the expense reasonably to be incurred in removing the brush affords an adequate remedy, and no exigency exists for resorting to the court of equity.

**Injunction—Continuing Injury—Diversion of Water.**

13. Where a railroad in changing its roadbed diverted the water of a brook so that it seeped through the embankment and damaged adjoining land, such acts constituted a continuing trespass.

**Injunction—Laches—Trespass.**

14. Where the owner of land adjoining a railroad for seven years after the railroad diverted a stream so as to cause seepage on the

land asserted no rights and sought no relief, her long delay precluded equitable intervention.

### Equity—Objections to Jurisdiction—Time.

15.  Where a railroad sued to enjoin interference with its right of way by adjoining owners, and they filed a separate suit in equity to reform their deed to the railroad of the right of way and to enjoin trespass, to which demurrer was overruled, and the railroad filed an answer denying the averments of the complaint and setting forth as a defense the averments of its complaint in the original suit, the rule that objection to jurisdiction in equity comes too late after defendant in answer asks for affirmative relief did not apply.

### Equity—Legal Relief—Denial of Equitable Relief—Right.

16.  Where a railroad sued to enjoin interference with its right of way by adjoining owners, and they filed a separate suit in equity to reform their deed to the railroad of the right of way and to enjoin trespass, to which demurrer was overruled, and the railroad filed an answer denying the averments of the complaint and setting forth as a defense the averments of its complaint in the original suit, when the land owner's bill was found to be without equity, her claim for damages could not be adjudicated.

[As to right to affirmative relief on cross-bill in suit to quiet title, see note in **Ann. Cas.** 1917D, 674.]

From Multnomah: Henry E. McGinn, Judge.

Department 2.    Statement by Mr. Justice Moore.

This suit was commenced July 17, 1915, by the Oregon-Washington Railroad & Navigation Company, a corporation, against Frank H. Reed to enjoin interference with a railway right of way and to quiet the title thereto.    The defendant on the 28th of that month filed an answer alleging *inter alia* that his wife, Minnie T. Reed, was the owner in fee of the real property over and across which extended that part of the right of way involved.    Three days thereafter the plaintiff, by leave of court, filed an amended complaint making Mrs. Reed a party defendant.    The defendants on August 3, 1915, interposed a plea in abatement, on the ground that another suit was pending between Mrs. Reed and the Railway Company, involving the same subject matter.    Joined with the plea in abatement was an answer to the merits, and also a cross-bill in equity

by Mrs. Reed to enjoin the plaintiff, its agents, etc., from interfering with or trespassing upon her land, to recover $3,000 as damages to her real property, and to reform a deed executed by her and her husband to the plaintiff's predecessor in interest. Answers and replies put in issue all the material averments of the pleadings of the respective parties. At the trial of the cause the court, in order to be advised, called a jury who inspected the premises and after hearing the evidence, made written replies to questions submitted to them as follows:

"First, what damage, if any, has the water as changed by the railroad company, done to Mrs. Reed's land?

"Answer. None.

"Second, was that damage caused by the construction of the railroad on the revised line, which construction includes the method of handling the drainage?

"(A.) No damage.

"Third: Did the railroad company excavate from the toe of the slope on the south side of the track at the west portal to tunnel number 1, more yardage than was reasonably necessary to maintain the safety and efficiency of the railroad?

"(A.) No.

"Fourth: If the third question is answered in the affirmative, in what sum do you assess the damage?

"(A.) No damage."

From these special verdicts and from the evidence received the court made findings of fact and of law and based thereon decreed that the plaintiff was the owner and entitled to the possession of a strip of land conveyed to its predecessor in interest May 28, 1881, by Frederick Willer, the predecessor in title of the defendants; that the plaintiff was also such owner and entitled to the possession of a strip of land conveyed

to its predecessor in interest by the defendants April 2, 1907, particularly describing each strip, and perpetually enjoined the defendants, their agents, etc., from interfering in any manner with or trespassing upon the real property so conveyed, awarding them the right, however, to construct and maintain a private road or trail over an acre of land particularly described, and also authorizing them to maintain a private crossing with gates over the railway near the west end of the tunnel, but not so to exercise the latter right as actually, imminently or potentially to injure the plaintiff's property. From this decree the defendants appeal.    Modified.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Mr. Arthur C. Spencer, Mr. William W. Cotton, Mr. W. A. Robbins* and *Mr. Charles E. Cochran,* with an oral argument by *Mr. Spencer.*

Mr. Justice Moore delivered the opinion of the court.

1. It is contended by defendants' counsel that an error was committed in denying their plea in abatement, interposed on the ground that a prior suit, instituted by Mrs. Reed against the plaintiff herein, was pending. It will be remembered that this suit was commenced against Mr. Reed July 17, 1915, and that on the 31st of that month an amended complaint was filed making Mrs. Reed a party defendant. She instituted a suit against the Railroad Company as defendant July 28, 1915, or eleven days after this suit was begun, and as

this is the prior suit and was pending when her suit was commenced, no error was committed as alleged.

It appears from a transcript of the evidence that Mrs. Reed is the owner in fee of lots 1 and 2, section 26, T. 1 N., R. 4 E., in Multnomah County, Oregon. Her predecessor in title, Frederick Willer, in consideration of $70 executed on May 28, 1881, to the Oregon Railway & Navigation Company, one of the plaintiff's predecessors in interest, a deed conveying a strip of land 100 feet in width, being 50 feet in width on each side of and parallel with the center line of the grantee's railroad, as the same was staked out and located over and across such lots. That deed contains a clause which reads:

"Provided, that said railway company agrees to provide and maintain two wagon road crossings for the use of said Willer, one of which is to be the county road, and to permit said Willer to construct a wood chute under said track and to leave an opening therefor."

The lots so described border for a distance of 160 rods upon the Columbia River, along the left bank of which the railway was originally constructed as surveyed. A mound on this real property, generally known as "Table Rock" extends into the river, the cape of the hill being nearly in line with the division between these lots. A tunnel 614 feet in length was cut through the rocky point at an expense of more than $75,000. From a blue-print received in evidence it is disclosed that the right of way conveyed by Willer was surveyed as a tangent extending northeasterly from the west boundary of lot No. 2, about 600 feet; thence the line slightly curved southerly a short distance; thence the survey sharply curved northerly to about

half way through the tunnel, and thence by a tangent southeasterly to the east boundary of lot No. 1.

The plaintiff's predecessor in interest, desiring to reduce the curvature of its railway, which had been constructed and was operated on the line, as originally laid out, caused another survey to be made across these lots, and on July 11, 1906, in consideration of $500, secured from Mrs. Reed and her husband, who had succeeded to the estate of Willer in the premises, a deed conveying

"A strip of land 100 feet wide, being 50 feet in width on each side of and parallel with the revised center line of the main track of the Oregon Railroad & Navigation Company's railroad, as the same is staked out and located over and across the lands of the said grantors,"

particularly describing the lots. This deed contains the following clause:

"This instrument is intended as a deed of right of way for the construction of the railroad on said revised line, and is conditioned that upon the change of the railroad from the present to the above location, all that part of the original right of way not included in the above granted strip shall revert to and become the property of the grantors. The grantee will construct and maintain for the use of the grantors a private crossing at grade with gates."

It further appears from the blue-print mentioned, that the north boundary of the right of way last conveyed, begins at a point on the west line of lot No. 2, about 30 feet north of the right so granted by Willer, and extends by a long curve to the east line of Lot No. 1, at a point about 70 feet north of the right of way originally conveyed. About midway of the excavation of the tunnel mentioned, the north boundary of the new right of way coincides for about 200 feet

with the south boundary of Willer's grant.   After the
second deed was executed, the plaintiff's predecessor
in interest began work on the revised line, by starting
another tunnel 655 feet in length, the west entrance of
which was about 90 feet south of the old tunnel, while
the east end of the new cut was only about 30 feet
south of the old subterranean passage.   While cutting
the new tunnel, earth on the south side of and beyond
the line of the revised right of way, kept falling at the
west end of the excavation, whereupon the defendants
asserted claims for damages to and trespasses upon
their lands, and in order amicably to adjust the matter,
and to procure more land the plaintiff's predecessor
in interest, upon the payment of $1,000 to Mrs. and Mr.
Reed secured from them, on April 2, 1907, another deed
reconveying the revised right of way as set forth in
their deed of July 11, 1906, and also granting about an
acre of land on the south side of the revised right of
way at the west end of the tunnel where the slides
had occurred, particularly describing such premises.
Material clauses in the latter conveyance read:

"This deed is in lieu of and a substitute for a deed
of bargain and sale made by the grantors herein to the
grantee herein, dated July 11, 1906, and recorded at
page 328 of Book 362 of the Records of Deeds of Mult-
nomah County, Oregon.   The grantee herein shall
not excavate more earth from said premises hereby
granted (about an acre where the slides had occurred)
than is necessary for the proper and safe protection
of its railroad.   The consideration herein is in full
satisfaction for any and all damages that may in any
manner result to the adjacent lands of the grantors
by virtue of the construction of said railroad on the
grantee's revised line through said premises.   All
crossings and other privileges set forth in the deed of
July 11th, above referred to, are hereby waived and
held to be null and void, but grantors, their heirs and

assigns, or any of them, may construct and maintain one private road or trail over the land secondarily described herein, (the acre mentioned) and maintain thereat a private crossing with gates over grantee's railroad at the west end of the tunnel on said premises. Together with all and singular the trees, wood and timber thereon, and the stone, gravel and material therein, but the trees on top of the tunnels shall not be unnecessarily cut or removed by the grantee herein.''

Pursuant to the last conveyance so made, the grantee therein named completed the revised line of railway, cut the new tunnel at an expense of more than $100,000 and moved the ties and rails from the old track to the new, finishing the work about September, 1908, when trains were then and thereafter operated through the new tunnel. The plaintiff herein on December 23, 1910, by mesne conveyances, secured a transfer of all the right, title, interest and estate in and to the premises so granted by Willer and the defendants to its predecessors, the Oregon Railway & Navigation Company and the Oregon Railroad & Navigation Company. Thereafter the defendants, asserting that under their deed of July 11, 1906, they were entitled to the old tunnel, took possession thereof without permission of the Railway Company, built at the west end of the new tunnel a retaining wall of logs, earth and brush, and their tenant removed from the old tunnel many of the timbers and supports therein. This suit was thereupon commenced and terminated as hereinbefore set forth.

At the trial Mrs. Reed as a witness in her own behalf testified that having secured the services of an attorney to protect her interests in the matter, she relied upon his advice and, with her husband, executed the conveyance April 2, 1907, without carefully examining the deed or knowing that it purported to

deprive her of the rights which were reserved by her conveyance of July 11, 1906. Mrs. Reed sought by such testimony and that of her witnesses a reformation of the latter deed so as to make it conform with the terms of an alleged oral contract, pursuant to which it was claimed the deed was made, so as to convey only the small tract of land at the west end of the new tunnel, and to have restored to her the rights of crossing the railway track as specified in the Willer deed. Mrs. Reed called as her witness George W. Joseph, who as her attorney secured the settlement with the Railway Company, pursuant to which she received $1,000 for executing the deed of April 2, 1907. This witness testified that he received from the Railway Company a writing prepared as a deed to be executed by Mrs. Reed; that he examined the instrument so submitted and suggested some alterations which were adopted and incorporated in another document that was sent to him; that Mrs. Reed and her husband were in his office at Portland, Oregon, when the latter writing was received and examined by him and them, in referring to which instrument the witness stated upon oath: "This deed was understood to be exactly what it purports to be, and it was so understood by all the parties interested." In alluding to the settlement which was secured, Mr. Joseph further testified:

"You see, the Reeds were getting $1,000 for a slope, you understand, that came down there [referring to the acre at the west end of the new tunnel]. Of course, it took this trail or road, which they talk about, (passing over the one acre) but so far as the commercial value of what the O. R. and N. (plaintiff's predecessor) got there, you understand, it was worth very little, and a $1,000 was an immense price to be paid for it, and that is the truth, and I told the Reeds so at that time and advised settlement, of course. I

think the railroad company offered a small amount; they offered something like $100 at first, and when we could get $1,000 there was no hesitancy on my part. We held and squeezed until we got the $1,000 and they were at work there and they had to have this right of way, and that is the way we got it.''

In adverting to the final adjustment of the matter which was consummated by the deed of April 2, 1907, the witness further testified:

''But at this time we were settling differences that had existed between these people for a long time, and it was settled. And when these people say that they didn't understand this instrument, it is too ridiculous for anything.''

Mr. Joseph again referring to such settlement and to the defendants herein, also stated upon oath:

''Well, when I got $1,000 for them there wasn't no two happier people in the United States than they were to get the $1,000 under that deed.''

The witness further referring to the defendants also testified:

''They understood that they were giving up,—that that second deed was wiped out, and that the railroad company got what it had under this old deed, and that acre of ground that had slipped down. That is what they thought they were giving up, and when they got that $1,000 they were getting paid big. And they got the right to construct a road there and have a crossing.''

In answer to the question, ''And Mr. Joseph, when you approved this deed and had them sign it, you understood that they were conveying to the railroad company what you have just testified, is that right?'' The witness replied, ''That is right.'' Thereupon the defendants' counsel, addressing the witness and the court, announced: ''That is all. If your Honor please,

in view of Mr. Joseph's testimony, it would be uselessly consuming the time of the court to proceed with this case.   I feel that under his testimony I would not be justified in offering any further testimony, because he was their attorney, and, while the clients do not agree with him, he was their attorney and they have offered him as a witness and they cannot contradict him, as I understand it, and I will have to abide by it."

2. This declaration conceded the final adjudication of one of the issues involved.   The announcement, having been approved by the court, forever settled the question that the defendants' deed of April 2, 1907, was knowingly executed by them as a substitute for, and in lieu of their conveyance of July 11, 1906, as much so as if the latter deed had never been made. As there had been no abandonment by the Railway Company of any part of its original right of way across the lands of Mrs. Reed, so that they might possibly have been reinvested with the title thereto as granted by their predecessor Willer, and reserved by their deed of July 11, 1906, the solemn declaration so made by their counsel, and justified from a preponderance of the evidence received, precludes the possibility of his clients securing a reformation of their grant evidenced by the deed of April 2, 1907.

Notwithstanding such asseveration, the trial of the cause was continued as to the remaining issues, namely, the right of the defendants to have crossings constructed and maintained by the Railway Company across its tract for their accommodation, as evidenced by the grant made by Willer, and as to the damages resulting to their premises by reason of trespasses alleged to have been committed thereon by the Railroad Company.   The defendants' counsel, referring

to the original grant of the right of way and to his clients, remarked: "We think the crossings reserved in the Willer deed run with the land; that they are entitled to them, and of course the 1907 deed provides for a crossing for the Reeds." The court replied: "I think there isn't any dispute about that. In fact, the Railroad Company had admitted here that you are entitled to that, and you certainly are." The plaintiff's counsel: "There is no doubt about it." The Court: "There is no doubt about it. There will be no trouble about it." The plaintiff's counsel: "Now, if there is any question about the Willer deed, we can offer it in evidence here." The Court: "Very well." Thereupon such deed was received in evidence.

3. It will be remembered that by the original conveyance of the right of way, the plaintiff's predecessor stipulated to provide and maintain for Willer's use two wagon-road crossings, one of which was to be on the county road. This reservation having been restricted to Willer's use only and not extending to his assigns it is questionable if the specified rights run with the land, or were anything more than personal covenants. In the absence of any evidence in relation to the matter, the reference in the reservation to a county road might create an inference that the highway so designated was then *in esse* annexed to and a part of the land, and for that reason the Railway Company was required to perform the terms of its agreement in favor of Willer's assigns, without express words to that effect: *Brown* v. *Southern Pacific Co.*, 36 Or. 128 (58 Pac. 1104, 78 Am. St. Rep. 761, 47 L. R. A. 409). From an examination of the blue print referred to, it would seem that the county road had been abandoned for a "gate" is indicated upon the print on the line where the highway originally crossed

the railway track.  But however this may be, it will
be taken for granted, from the observations of the
court and counsel for the respective parties, that the
rights of crossing provided for in the Willer deed run
with the land and became vested in Mrs. Reed.  The
deed executed by the defendants to the Railway Com-
pany April 2, 1907, made no mention of such reser-
vations and provided only for a private crossing to be
made and maintained by the grantors.  Whether or
not the deed executed by Willer and the conveyance
made by the defendants July 11, 1906, granted more
than an easement, it is not necessary now to determine.
The deed made by Mr. and Mrs. Reed April 2, 1907,
unquestionably transferred the fee to the premises
therein described.  This conveyance though per-
mitting the defendants to make and maintain a private
crossing over the railroad, cut off and forever extin-
guished all parts of the crossings specified in the
Willer deed, that lie north of the south boundary of the
right of way granted by the defendants April 2, 1907.
Measuring the lines as indicated by the scale noted
on the blue print, the two crossings mentioned in the
Willer deed, as illustrated on that map, extend from
the original south boundary of that grant northerly
50 feet and 20 feet, respectively, where is encountered
the south boundary of the land granted in fee April
2, 1907, across which latter described premises, to a
distance of 100 feet in each instance, no right to pass
is reserved, except the defendants' right to make and
maintain a private crossing to be protected at each end
by gates.

4. If the south line of the last granted right of way
were fenced, the defendants would be entitled under
the provisions of the Willer deed to pass over the
original crossings northerly from the south boundary

of this grant, 50 feet on one of the crossings and 20 feet on the other to the line of the supposed fence, but neither Mr. nor Mrs. Reed, nor their agents, could legally go farther north than the protecting inclosure which would then mark the south boundary of the premises granted April 2, 1907, except along the private crossing which is particularly specified in the deed of that date. Diminishing the boundary of the land so granted by Willer to the Railway Company by the strip taken therefrom by the defendants' conveyance of the fee, no right to cross any part of the premises last particularly described can possibly be found in their favor by the most liberal construction of the two grants, when read together, except the private right of crossing mentioned. The trial court, therefore, properly restricted the right of Mr. and Mrs. Reed, their agents, etc., to the private crossing of the railway track to be made and maintained by them at the place designated in their latest conveyance to the plaintiff's predecessor, which grant overlapped the greater part of the strip conveyed by Willer.

5, 6. The deed of April 2, 1907, having been executed, as the evidence shows, with the intent of granting to the Railway Company all that portion of the Willer strip of land that is not embraced in the premises so conveyed by the defendants in fee, in order that the old tunnel might be used as a part of a contemplated double track at that place, there was no equity whatever in the cross-bill interposed herein. This being so, the element of damages which the defendants may have sustained is necessarily eliminated, for the right to recover such compensation in a suit must depend upon some equity which enables the court to secure and retain jurisdiction of the subject matter, and as an incident thereof to award the damages inflicted:

*Fleischner* v. *Citizens' Real Estate & Investment Co.,* 25 Or. 119 (35 Pac. 174) ; *Bishop* v. *Baisley,* 28 Or. 119 (41 Pac. 937) ; *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666); *Bernard* v. *Willamette Box & Lbr. Co.,* 64 Or. 223 (129 Pac. 1039) ; *Shultz* v. *Shively,* 72 Or. 450 (143 Pac. 1115).   Where, however, at the hearing of a cause if it be found that the equity upon which the case was predicated does not exist, the suit is thereupon terminated and cannot be tried for the purpose of ascertaining any alleged legal right that may exist between the parties : *Burrage* v. *Bonanza etc. Min. Co.,* 12 Or. 169 (6 Pac. 766) ; *Ming Yue* v. *Coos Bay R. R. Co.,* 24 Or. 392 (33 Pac. 641) ; *Allen* v. *Elwert,* 29 Or. 428 (44 Pac. 824, 48 Pac. 54) ; *Denny* v. *McCown,* 34 Or. 47 (54 Pac. 952) ; *Multnomah County* v. *Portland Cracker Co.,* 49 Or. 345 (90 Pac. 155) ; *Hetrick* v. *Gerlinger Motor Car Co.,* 84 Or. 133 (164 Pac. 379).

The rules of law thus firmly established in this state preclude an examination of the questions of damages alleged in the cross-bill when the proof shows there was no equity therein.   It follows. from these considerations that the decree is modified, so as to exclude any determination of the damages alleged to have been sustained.

MODIFIED.   REHEARING DENIED.
SUPPLEMENTAL PETITION FOR REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MCCAMANT and MR. JUSTICE BURNETT concur.

Rehearing denied January 29, supplemental petition for rehearing
denied February 19, 1918.

PETITION FOR REHEARING.

(170 Pac. 300.)

On petition for rehearing.   Denied.

*Mr. Arthur C. Spencer, Mr. William W. Cotton, Mr.
W. A. Robbins* and *Mr. Charles E. Cochran,* for the
petition.

*Mr. Ralph R. Duniway, contra.*

Department 2.   MR. JUSTICE MOORE delivered the
opinion of the court.

In a petition for a rehearing it is maintained by
plaintiff's counsel that in refusing to consider the
question of damages alleged to have been sustained
by the defendant, Minnie T. Reed, when it was found
she had suffered no injury, the rule of law governing
the cause was misapplied by this court.   It is argued
that the complaint in her suit against the plaintiff
herein not only sought a reformation of her right of
way deed, on the ground of fraud practiced in pro-
curing it, but such pleading also averred that the
plaintiff's agents had trespassed upon her land by de-
stroying fences, tearing out culverts, diverting water
from its natural channel and cutting brush and leaving
it upon her premises to her damage, for the redress
of which injuries she had no plain, speedy or adequate
remedy at law; that such statements of fact constitute
separate grounds for equitable interference; that is-
sues were joined thereon and evidence received in
respect thereto; that because it was found the charge
of fraud had not been established, that conclusion did

not render her suit without equity.as to the other mat-
ters set forth in the complaint therein, and hence the
question of damages should have been considered and
the decree affirmed, since a court of equity having se-
cured jurisdiction for one purpose will retain the
cause until the entire subject matter has been fully
determined.

7. In states like Oregon where at all times the same
judge presides at the trial of suits in equity and
actions at law as they are called, these forums are
entirely separate and distinct, and the rule is so ele-
mentary that it needs no citation of decisions in sup-
port thereof, that when a court of equity obtains
jurisdiction of a cause for a particular purpose, it will
retain and exercise the power to hear and determine
all the necessary incidents depending thereon, though
they may involve purely legal matters as a part of the
relief to be awarded. The decree in such a case is
based upon the ground that equitable substance in the
light of judicial experience necessarily casts a shadow,
but when the essential equitable foundation is found
at the trial to be insufficient, the legal superstructure
undertaken to be erected thereon inevitably falls. As
tending to uphold the legal principle contended for by
plaintiff's counsel, they cite and rely upon the case of
*Cody Lumber Co. v. Coach,* 76 Or. 106 (146 Pac. 973).
There the defendants Arthur T. Coach, Joseph M.
Coach and Mary E. Cary, commenced an action at law
against the plaintiff, the Cody Lumber Co., a corpora-
tion, to recover the amount of seven promissory notes
executed by the latter. The corporation answered the
complaint, and availing itself of the remedy prescribed
by Section 390, L. O. L., filed as plaintiff a cross-bill
in equity, alleging that the notes sued upon were sub-
ject to adjustment, in accordance with the terms of an

agreement whereby the sawmill tally of logs for the purchase of which the notes were given, should be settled, setting forth a copy of the contract. The averments of the cross-bill were denied by an answer which also set forth new matter as a separate defense. The allegations of such new matter were denied by the reply. Notwithstanding the interposition of a cross-bill, by express provision of the statute (Section 390, L. O. L.) stays the prosecution of a law action until a decree is rendered in the equity suit, the parties in the case mentioned stipulated that the action and suit should be heard and determined at the same time. The effect of such an agreement was to waive a trial by jury in the law action. From the evidence received in that case a judgment was given in favor of the holders of the promissory notes for the amounts thereof as demanded in the complaint in the law action, thereby impliedly finding that the cross-bill was without equity, from which final determination the corporation appealed. As no relief prayed for in the cross-bill was awarded by the trial court or upon appeal, any conclusion there reached is not controlling herein.

8, 9. A continuing trespass committed upon the real property of another, tending to a removal of earth or of any substance therein or permanently attached thereto, will usually be enjoined in a suit instituted for that purpose by the party sustaining the injury: *Kitcherside* v. *Myers,* 10 Or. 21; *Mendenhall* v. *Harrisburg Water Co.,* 27 Or. 38 (39 Pac. 399); *Allen* v. *Dunlap,* 24 Or. 229 (33 Pac. 675); *Bishop* v. *Baisley,* 28 Or. 119 (41 Pac. 936); *Muldrick* v. *Brown,* 37 Or. 185 (61 Pac. 428); *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154); *Mathews* v. *Chambers Power Co.,* 81 Or. 251 (159 Pac. 564). These cases proceed upon the theory

that a trespass threatened or committed will injure or
destroy the substance of the owner's estate in the land,
in the manner in which the premises have been kept
or used.   Where the recurrence of the injury is not
reasonably to be apprehended, the remedy at law for
the recovery of the damages inflicted is usually re-
garded as adequate, and relief by injunction will
usually be denied: *Garrett* v. *Bishop,* 27 Or. 349 (41
Pac. 10).

   10–12. The testimony given at the trial herein tends
to show that the brush left upon Mrs. Reed's land was
cut by her permission along the right of way by the
plaintiff's agents, in order that a better view of the
semaphore might be obtained by locomotive engineers
having charge of trains going west from the tunnel.
The cutting of the shrubs was therefore not a trespass.
If, by leaving upon the land the brush when it should
have been burned after it was cut, Mrs. Reed was in-
jured, her remedy for the wrong thus inflicted was the
expense reasonably to be incurred in removing the
brush, and not the damages which might result by
reason of her inability to use the land for grazing or
other agricultural purposes.   An action at law to re-
cover the outlay thus necessitated affords an adequate
remedy and no exigency exists for resorting to a court
of equity.

   It also appears that the fences alleged to have been
destroyed were the protecting inclosures put up along
the lines of the original right of way by the plaintiff's
servants, which fences were removed and rebuilt by
such employees along the revised lines.   The author-
ity thus to move these fences seems to be unques-
tioned, and if Mrs. Reed sustained any injury in
consequence of the alteration, no reason has been dis-

closed why she should apply to a court of equity for the recovery of damages in this particular.

13. In building the altered roadbed a fill of earth was made west of the tunnel and a small brook originally flowing north was diverted from its channel and conducted in a ditch dug on the south side of the grade, whereby the water emptied into another stream which flowed through a culvert placed in the embankment. The testimony tends to show that by reason of this change water seeped from the ditch and percolated beneath the fill thereby making a part of Mrs. Reed's land, north of the embankment, moist and injuring the premises for pasturage. It further appears that the united waters had so accelerated the volume in the stream as to cause a quantity of soil to be washed away from the banks of the augmented channel. It would thus seem that a continuing trespass upon her real property had been thereby committed by the plaintiff's agents, and it remains to be seen whether or not injunctive relief can be awarded after the railroad has been built and is being operated. It must be admitted that if flowing water was diverted from its natural channel without Mrs. Reed's consent, the change in the current would appear to be unauthorized: *Hord* v. *Holston River R. Co.*, 122 Tenn. 399 (123 S. W. 637, 135 Am. St. Rep. 878, 19 Ann. Cas. 331, 336).

A text-writer in speaking of the equitable remedy in a case of that kind, remarks:

"To entitle one to relief by injunction against the construction of a railroad over his land, he must use due diligence in the assertion of his rights, since the relief will not be granted in favor of one who has been guilty of laches, and who has by his own conduct given an implied assent to the construction of the work which he afterwards seeks to restrain": 1 High, Inj. (4 ed.) § 618.

Another author in discussing this subject, observes: ''The courts may, it seems, take into consideration the fact that companies are common carriers and *quasi* public in their nature, and refuse to grant an injunction for slight cause where it would prevent or obstruct the operation of the road and not only cause great injury to it, but also inconvenience the public'': 1 Elliott, Railroads (2 ed.), § 628.

14. The revised line of railroad was completed and trains were operated thereon in September, 1908. Prior to that time the roadbed was graded and the water flowing in the brook had been diverted. The cross-bill herein was not filed until August 3, 1915. For nearly seven years Mrs. Reed, though living near the tunnel and aware of all the changes as they were being made, never applied to any court for redress of the injuries of which she now complains. Her long delay in this respect precludes equitable intervention in her behalf as to the diversion of the water and the destruction of the culvert, as originally built for that brook. If, therefore, Mrs. Reed has any remedy it is by an action at law and not by a suit in equity.

15, 16. The facts alleged in the complaint in the suit in equity by Mrs. Reed against the Oregon-Washington Railroad & Navigation Company might as well have been set forth as a separate defense in the latter's suit in equity against her and her husband, and thereby have avoided the bringing of more than one suit. As she commenced a separate suit, however, for injunctive relief when it was unnecessary to do so, her complaint partakes of the nature of an equitable counterclaim. To this complaint a demurrer was interposed on the ground *inter alia* that there was no equity in the bill. The demurrer was overruled and an answer filed denying the material averments of the complaint and setting forth as a separate defense the facts in

substance as alleged in the complaint in the suit of the Oregon-Washington Railroad & Navigation Company against Mr. and Mrs. Reed, and praying for injunctive relief as therein sought. We do not understand the rule that an objection to the jurisdiction in equity comes too late after the defendant by his answer asks for affirmative relief, as announced in *Kitcherside* v. *Myers,* 10 Or. 21, and followed in subsequent cases is controlling herein. Those cases are based upon the assumption that if either the complaint or the answer states facts showing a right to equitable relief, the pleading is sufficient for that purpose and jurisdiction of the cause will be taken. In the case at bar Mrs. Reed's complaint inaugurating a separate suit, was sufficient to invoke an exercise of equitable jurisdiction. The affirmative relief asked in the answer to that complaint gave no further right, and when her bill was found to be without equity, there remained no foundation upon which could be predicated her claim for damages. Such being the case, the motion should be denied and it is so ordered.

Modified. Rehearing Denied.<br>Supplemental Petition for Rehearing Denied.

Mr. Chief Justice McBride, Mr. Justice McCamant and Mr. Justice Bean concur.